[Civ. No. 63517. Second Dist., Div. One. Sept. 30, 1982.]

BERNE BUSH et al., Plaintiffs and Appellants, v.
CALIFORNIA CONSERVATION CORPS et al., Defendants and
Respondents.

COUNSEL

Jeannie A. Barrett for Plaintiffs and Appellants.

George Deukmejian, Attorney General, R. H. Connett, Assistant Attorney General, and Beth Lori Faber, Deputy Attorney General, for Defendants and Respondents.

OPINION

SPENCER, P. J.—

## INTRODUCTION

Plaintiffs Berne Bush (Bush) and Thomas Farley (Farley) appeal from an order of dismissal entered after the trial court sustained the demurrer of defendant California Conservation Corps (CCC) and plaintiffs failed to amend causes of action for writ of mandate, injunctive relief, deprivation of civil rights (42 U.S.C. § 1983) and declaratory relief.

## STATEMENT OF FACTS

On demurrer, all material facts properly pleaded and all reasonable inferences which can be drawn therefrom are deemed admitted. (*Glaire v. La Lanne-Paris Health Spa, Inc.* (1979) 12 Cal.3d 915, 918 [117 Cal.Rptr. 541, 528 P.2d 357]; *Daar v. Yellow Cab Co.* (1967) 67 Cal. 2d 695, 713 [63 Cal.Rptr. 724, 433 P.2d 732].) Plaintiffs' complaint discloses the following express and reasonably inferred facts: On February 22, 1978, plaintiffs Bush and Farley executed contracts with the CCC. The contracts provided in pertinent part: The corpsmember agrees to conform to the rules and regulations of the state and any orders of authorized state officials and failure to do so would result in immediate termination; appropriate technology curriculum and other educational opportunities shall be provided as part of the benefit of

membership in the CCC; the agreement may be terminated upon written notice to the corpsmember upon the failure of the corpsmember to complete within a reasonable time the required orientation and training program; although corpsmembers are not civil service employees the state will provide workers' compensation coverage; corpsmember acts in an independent capacity and not as an employee or agent of the State of California; the agreement may be terminated by either the director or his designee or by the corpsmember upon written notice to the other; violation of any of the contract terms may be cause for termination.

On June 21, 1978, plaintiffs received letters of termination from the director of their facility. Farley was discharged for poor attitude made manifest by his insubordination and his threatening of a fellow corpsmember. Bush was likewise terminated for poor attitude, specifically for insubordination, negative attitude and for "fomenting discord." At the time of dismissal, no pre- or posttermination procedures existed for challenging disciplinary action.[1] There was a reinstatement policy which could have been utilized after discharge, but that procedure ostensibly required the offending corpsmember to admit guilt and promise that he "intended to do better." There was also a requirement that a reinstated corpsmember reattend a six-week orientation program without pay. Although this procedure was made available to plaintiffs on July 12, 1978, they declined to use it since they wished to challenge the accuracy of the charges, rather than admit guilt.

When plaintiffs expressed their desire to utilize a procedure in which they could challenge the action taken, they were informed that no such procedure existed. A grievance procedure was instituted by the CCC in May 1979 and an offer of reinstatement was made to plaintiffs in November 1979, conditioned upon plaintiffs dropping their civil action for back wages. Plaintiffs found the offer unacceptable and proceeded with the suit.

## CONTENTIONS

Plaintiffs contend that the trial court abused its discretion in sustaining the demurrer in that the complaint adequately stated a cause of action under all theories pleaded.

---

[1]The defendant contends that such procedures did exist but that an evidentiary hearing would be required to prove it. As a consequence, the contention is beyond the scope of the demurrers.

## DISCUSSION

■ On appeal, the plaintiff bears the burden of demonstrating either that a demurrer was sustained erroneously or that sustaining a demurrer without leave to amend was an abuse of discretion. (*Stanson* v. *Brown* (1975) 49 Cal.App.3d 812, 814 [122 Cal.Rptr. 862].) ■ A trial court's ruling sustaining a demurrer is deemed erroneous where a plaintiff has stated a cause of action under any possible legal theory. (*Barquis* v. *Merchants Collection Assn.* (1972) 7 Cal.3d 94, 103 [101 Cal.Rptr. 745, 496 P.2d 817]; *Porten* v. *University of San Francisco* (1976) 64 Cal.App.3d 825, 833 [134 Cal.Rptr. 839].) In assessing the sufficiency of a demurrer, all material facts pleaded in the complaint and those which arise by reasonable implication are deemed true. (*Buckaloo* v. *Johnson* (1975) 14 Cal.3d 815, 828 [122 Cal.Rptr. 745, 537 P.2d 865]; *Glaire* v. *La Lanne-Paris Health Spa, Inc., supra,* 12 Cal.3d 915, 918.)

■ Plaintiffs maintain that they were entitled to the procedural due process procedures promulgated in *Skelly* v. *State Personnel Bd.* (1975) 15 Cal.3d 194 [124 Cal.Rptr. 14, 539 P.2d 774]. Defendant responds by denying that plaintiffs were public employees or possessed any other property right in continued employment and as a consequence were not entitled to due process protection. Relying on *Barthuli* v. *Board of Trustees* (1977) 19 Cal.3d 717 [139 Cal.Rptr. 627, 566 P.2d 261], the trial court accepted this argument, finding plaintiffs to be employees under a contract for a term of years which created no property interest. However, we find *Barthuli* inapposite to the case at bar. Upon considering a comprehensive statutory scheme relating to school teachers and administrators, the court concluded that the statutes conferred upon school administrative and supervisory personnel the right to positions as teachers, but did not vest such persons with a right to administrative positions. (*Id.,* at p. 721.) The distinguishing feature of *Barthuli* is the existence of a statutory employment right *other* than that asserted by the petitioner. ■ Due process rights stem from any legitimate claim of entitlement created from an existing understanding which emanates from a source independent of the Constitution; such a source need not be purely statutory, but may be embodied in other forms. (*Perry* v. *Sindermann* (1972) 408 U.S. 593, 601 [33 L.Ed.2d 570, 579-580, 92 S.Ct. 2694]; *Board of Regents* v. *Roth* (1972) 408 U.S. 564, 577 [33 L.Ed.2d 548, 560-561, 92 S.Ct. 2701]; see also *Skelly* v. *State Personnel Bd., supra,* 15 Cal.3d 194, 207.)

The legislative findings and intent for creating the CCC are set forth in Public Resources Code sections 14000 and 14001. A reading of the statutory language clearly indicates that at no time was it contemplated that corpsmembers be considered public employees. The statutory scheme was to train and educate corpsmembers, thereby making them more attractive to prospective employers after completion of their tour with the CCC. There is an emphasis on "learning basic and fundamental work ethics which include discipline, cooperation, understanding to live and work with others and, most importantly, learning the value of a day's work for a day's wages." (Pub. Resources Code, § 14000.) A corpsmember is to receive training which is directly related to the work performed by the CCC. The CCC also encourages participation in workshops in career planning, remedial reading and classes at local community colleges. All these elements contribute to the character building process which is central to the program. Furthermore, the program seeks to instruct corpsmembers as to their rights and responsibilities as citizens and their relationship with their government. The program was intended to provide corpsmembers with "meaningful educational and work opportunities ... provid[e] on-the-job training ... [and an opportunity to] acquire employable skills, experience and knowledge." (Pub. Resources Code, § 14001.)

Clearly, the Legislature never contemplated the elevation of corpsmembers to the status of civil service employees; employment is relegated to a role secondary to the emphasis on training and education. As a consequence, plaintiffs have no statutory property interest as permanent (nonprobationary) public employees per *Skelly* v. *State Personnel Bd., supra,* 15 Cal.3d 194. But as noted, *ante,* that does not resolve the matter.

In *Goss* v. *Lopez* (1975) 419 U.S. 565 [42 L.Ed.2d 725, 95 S.Ct. 729], the United States Supreme Court determined that the "State is constrained to recognize a student's legitimate entitlement to a public education as a property interest which is protected by the Due Process Clause and which may not be taken away for misconduct without adherence to the minimum procedures required by that Clause." (*Id.,* at p. 574 [42 L.Ed.2d at pp. 734-735].) The education referred to in *Goss* was at the precollege level and it is not entirely clear that the statutory creation of postsecondary public education confers a similar entitlement. The training and education provided by the CCC is more akin to that of a postsecondary vocational school. Enrollment therein is not a matter of right and, hence, we conclude that there is no statutory

entitlement of the *scope* recognized in *Goss.* However, there is, within the statutory scheme, the foundation for creation of an entitlement. The statutes formerly conferred upon the resources agency secretary and now confer upon the director of the CCC authority and responsibility to implement the legislative purpose in forming the corps. (Pub. Resources Code, §§ 14306, 14307.) That purpose encompasses the training and education of youth deemed suitable under *selection* and *retention* criteria adopted by the director. Accordingly, those youth admitted to the corps do have a limited statutory entitlement the parameters of which are reflected in the regulations of the CCC. (Cf. *Mendoza* v. *Regents of University of California* (1978) 78 Cal.App.3d 168, 174 [144 Cal.Rptr. 117], with *Board of Curators, Univ. of Mo.* v. *Horowitz* (1978) 435 U.S. 78, 82 [55 L.Ed.2d 124, 130, 98 S.Ct. 948].)

■ We need not rely solely on those statutes authorizing regulations promulgating retention criteria to find a property interest, however; there exists a clear, independent basis. The contract between plaintiffs and the CCC enumerated specific grounds for dismissal in many of its paragraphs. ■ Generally, if an employee "is subject to discharge only for cause, he has a property interest which is entitled to constitutional protection." (*Mendoza* v. *Regents of the University of California, supra,* 78 Cal.App.3d 168, 175; see also *Arnett* v. *Kennedy* (1973) 416 U.S. 139 [40 L.Ed.2d 15, 94 S.Ct. 1633] and *Perry* v. *Sindermann, supra,* 408 U.S. 593.) ■ We perceive no reason to deny the benefit of this principle to plaintiffs, notwithstanding the primarily educational nature of their relationship with the CCC. Defendant argues, however, that the provision which states the contract may be terminated upon written notice creates a contract at will, which affords plaintiffs no right to due process protection. (*Healdsburg Police Officers Assn.* v. *City of Healdsburg* (1976) 57 Cal.App.3d 444 [129 Cal. Rptr. 216].)

■ The whole of a written instrument is to be taken together, in order to give effect to every phrase and part. (Civ. Code, § 1641; *County of Marin* v. *Assessment Appeals Bd.* (1976) 64 Cal.App.3d 319, 325 [134 Cal.Rptr. 349].) ■ Had the CCC intended the contract to be terminable at will, it would have been a simple matter to have expressly said so, rather than to stress, in many parts, specific causes for dismissal, as the state has done. Defendant's construction of the contract renders the express provisions entirely superfluous and runs counter to the spirit of the agreement. Clearly, it was contemplated that termination should only be for cause and the contract expresses those "mutually

explicit understandings" held to create a property interest in *Perry* v. *Sindermann, supra*, 408 U.S. 593, 601 [33 L.Ed.2d 570, 580]. Accordingly, we hold that plaintiffs do possess a property interest subject to some degree of due process protection.

▮▮▮ *Goss* v. *Lopez, supra*, 419 U.S. 565, held that, at a minimum, the students involved therein must, before suspension, "be given *some* kind of notice and afforded *some* kind of hearing." (*Id.*, at p. 579 [42 L.Ed.2d at p. 737].) Although plaintiffs were not necessarily entitled to the full panoply of rights set forth in *Skelly* v. *State Personnel Bd., supra*, 15 Cal.3d 194, for public employees, they were entitled to the minimum protection iterated in *Goss*. The complaint clearly alleges plaintiffs were given no opportunity for predischarge hearings. As a result, plaintiffs have stated a cause of action for deprivation of civil rights.

To hold otherwise would be contrary to the intent and purpose of the CCC and would serve to erode and undermine its effectiveness in developing concepts of responsible citizenship among corpsmembers. The CCC's failure to provide corpsmembers with an opportunity to challenge or refute the charges leveled against them is not conducive to the furtherance of respect for governmental institutions. In fact, such high-handed treatment only serves to breed contempt for the democratic process.

▮▮▮ Defendant contends that adequate administrative remedies existed at the time of plaintiffs' termination and, as a consequence, the trial court's ruling should be upheld on the ground of plaintiffs' failure to exhaust their administrative remedies prior to bringing suit. We disagree. The available procedures included in the record on appeal were clearly inadequate to protect plaintiffs' constitutionally protected property interest as they failed to satisfy due process requirements. At no time did any of the available procedures afford plaintiffs an opportunity to challenge the charges against them. The reinstatement procedure, relied on so heavily by defendant, required the offending corpsmembers to admit guilt and demonstrate contrition as a prerequisite for reinstatement. Defendant argues that procedures did exist for challenging disciplinary action at the time of plaintiffs' discharge. However, as defendant concedes, an evidentiary hearing would be required to prove the existence of these procedures; hence, the matter is beyond the scope of the demurrer.

Defendant further suggests that plaintiffs should have utilized the CCC's grievance procedure. This procedure did not exist at the time of

plaintiffs' termination and was not established until almost 11 months after their dismissal. It would be manifestly unfair and unreasonable to expect plaintiffs to utilize a procedure which did not come into existence until long after their discharge and consequent injury, even if we were to deem those procedures adequate in providing reasonable notice and an opportunity to be heard prior to discharge. Finally, the notice of termination letter of June 21, 1978, was deficient in satisfying minimal due process notice requirements, in that it only gave three hours for the plaintiffs to vacate the CCC facility. Had a hearing procedure existed, plaintiffs would have had no adequate time in which to mount any kind of opposition to the disciplinary action. ██ ██ ██ ██ Since the administrative remedies were nonexistent and/or constitutionally inadequate, there was no obligation on plaintiffs' part to exhaust them prior to bringing the action. (*Horn* v. *County of Ventura* (1979) 24 Cal.3d 605, 611 [156 Cal.Rptr. 718, 596 P.2d 1134].)[2]

██ We do not mean to imply what result will be reached during any further litigation. We merely hold that plaintiffs have stated a cause of action for denial of their constitutional rights (42 U.S.C. § 1983) and, upon that basis, may also seek a writ of mandate to compel defendant to comply with procedural due process and a declaration of rights. ██ However, the demurrer to the cause of action for injunctive relief properly was sustained in that plaintiffs have an adequate remedy at law in their action for damages. (*Baglione* v. *Leuê* (1958) 160 Cal.App.2d 731, 734 [325 P.2d 471].)

The order is reversed.

Dalsimer, J., and Soven, J.,* concurred.

On October 29, 1982, the opinion was modified to read as printed above.

---

[2]Defendant also contends that Farley's appeal is moot since he accepted reinstatement and soon afterwards voluntarily chose to terminate his relationship with the CCC. We disagree. Farley suffered damages as a result of his discharge without due process which were not remedied by reinstatement. Moreover, the controversy is one of broad public interest which is likely to recur. On either basis, the appeal is not moot. (*Ballard* v. *Anderson* (1971) 4 Cal.3d 873 [95 Cal.Rptr. 1, 484 P.2d 1345, 42 A.L.R.3d 1392].)

*Assigned by the Chairperson of the Judicial Council.