[No. B075700. Second Dist., Div. Four. Dec. 14, 1995.]

JUAN ZÚNIGA et al., Plaintiffs and Appellants, v.
HOUSING AUTHORITY OF THE CITY OF LOS ANGELES et al.,
Defendants and Respondents.

**COUNSEL**

Litt & Marquez, Barrett S. Litt, Mercedes M. Marquez, Jason R. Litt, Vicki Cody and Brenda E. Sutton for Plaintiffs and Appellants.

Gen Fujuioka and Maeve Elise Brown as Amici Curiae on behalf of Plaintiffs and Appellants.

James K. Hahn, City Attorney, Thomas C. Hokinson, Assistant City Attorney, Katherine J. Hamilton, Deputy City Attorney, Engstrom, Lipscomb & Lack, Paul W. Engstrom, Elizabeth L. Crooke and Cynthia L. Choate for Defendants and Respondents.

Thomas E. Campagne and Sarah A. Wolfe as Amici Curiae on behalf of Defendants and Respondents.

**OPINION**

**HASTINGS, J.**—Juan Zuniga and his extended family were residents of the Jordan Downs public housing project in the City of Los Angeles, which was operated by the Housing Authority of the City of Los Angeles (the Authority). After a fire set by arsonists killed five members of the family, the surviving members (appellants) filed a lawsuit against the Authority and the

City of Los Angeles (the City) for: (1) negligence; (2) negligent supervision; (3) intentional infliction of emotional distress; (4) negligent infliction of emotional distress; (5) wrongful death; (6) loss of consortium; (7) breach of covenant of quiet enjoyment; (8) nuisance, and (9) federal civil rights violations pursuant to title 42, United States Code section 1983. The Authority and the City each filed separate demurrers to the complaint which were sustained without leave to amend on March 5, 1993.[1] Appellants filed a notice of appeal on April 23, 1993, from the order "sustaining the Demurrer of Defendant Housing Authority . . . and the Demurrer of Defendant City of Los Angeles entered on March 5, 1993." We reverse.

## FACTUAL BACKGROUND

For purposes of this appeal, we accept the facts alleged in the complaint as true. (*O'Hara* v. *Western Seven Trees Corp.* (1977) 75 Cal.App.3d 798, 802 [142 Cal.Rptr. 487]; *Moncur* v. *City of Los Angeles* (1977) 68 Cal.App.3d 118, 121 [137 Cal.Rptr. 239].)

According to the complaint, in June 1991, Juan Zuniga, Sr., and six other members of his family were placed in unit 481 of the Jordan Downs project, and entered into a written lease with the Authority. Shortly thereafter, 13 other family members moved into the unit. Prior to and during the family's occupancy, the area in front of unit 481 was a hub of illegal drug activity. Previous tenants and guests of the unit had reported threats and harassment from drug dealers and their associates to the Authority. From the time the Zuniga family moved in, they were subjected to constant threats of violence, vandalism to their unit and physical assaults and confrontations by the various drug dealers. Family members were constantly warned by the offenders not to call the police, but nevertheless, they reported the incidents on a weekly basis. No action was taken to alleviate the situation, and their repeated requests for a transfer to another unit were denied. In fact, after one of the family members was beaten, the housing authority police visited the home twice to prepare a report, and each time, they paused to exchange greetings with the drug dealers and associates who were congregated outside. After these visits, the harassment escalated. On September 7, 1991, arsonists poured gasoline through the unit's mail slot and set fire to the unit. Five members of the family died.

Appellants are the surviving family members.

[1] A prior demurrer had been sustained with leave to amend, resulting in the filing of a first amended complaint. The demurrers at issue are to the first amended complaint.

## PROCEDURAL BACKGROUND

Following the filing of the first amended complaint, the Authority filed a motion to strike and a demurrer. The demurrer was based on the following arguments: (1) that appellants did not allege the requisite statutory basis for liability; (2) that the Authority is immune to this action; (3) that the Authority owed appellants no special duty; (4) that the claim is untimely under the Tort Claims Act; (5) that emotional distress is not actionable; (6) that loss of consortium damages are not available to the majority of the appellants, and (7) that no cause of action for violation of federal civil rights had been stated. No issue of causation was raised and the parties have not addressed the issue on appeal.

The City filed its own demurrer, which essentially argued that the City was not the proper party to sue and had no liability because it did not operate or own the housing project and was not a signatory to the lease.

After hearing oral argument and taking the matter under submission, the trial court sustained both demurrers without leave to amend as to all causes of action "for the reasons set forth in the moving and reply papers filed by the defendant." The trial court did not delineate any more specific reasons in its minute order or at argument. The minute orders also reflect no ruling on the motion to strike. Therefore, we are only presented with the legal issues raised in the demurrers.

An order for entry of dismissal as to respondent the Authority only was filed on April 8, 1993.

## CONTENTIONS ON APPEAL

Appellants contend the trial court erred in sustaining the demurrer because the Authority and the City had a statutory duty to provide safe public housing, that there was no statutory immunity and that a cause of action for federal civil rights violation was stated.

In addition to the grounds raised in its demurrer (i.e., that the City is not a proper defendant), the City contends in its respondent's brief that since no order of dismissal was ever entered as to the City, but only as to the Authority, the appeal as to the City must be dismissed. The City also contends that since appellants did not address the City's demurrer in its opening brief, appellants have abandoned their causes of action against the City.

In its respondent's brief, the Authority raises the same arguments upon which it based its demurrer: (1) that no statutory basis for liability exists; (2)

that the Authority is immune from any liability; (3) that the claims alleged in the seventh and eighth causes of action for nuisance and breach of covenant of quiet enjoyment are untimely, and (4) that no cause of action under 42 United States Code section 1983 was alleged.

## DISCUSSION

### 1. *Standard of Review*

■ "On appeal, the plaintiff bears the burden of demonstrating either that a demurrer was sustained erroneously or that sustaining a demurrer without leave to amend was an abuse of discretion. [Citation.] A trial court's ruling sustaining a demurrer is deemed erroneous where a plaintiff has stated a cause of action under any possible legal theory. [Citations.]" (*Bush* v. *California Conservation Corps* (1982) 136 Cal.App.3d 194, 200 [185 Cal.Rptr. 892].) It must also be borne in mind that in making this determination, we must construe the allegations of the complaint liberally. (*Yue* v. *City of Auburn* (1992) 3 Cal.App.4th 751, 757 [4 Cal.Rptr.2d 653].)

We now proceed to examine each argument raised in the Authority's demurrer.

### 2. *The Authority's Demurrer*

■ A public entity is not liable for tortious injury unless the liability is imposed by statute. (Gov. Code, § 815.)[2] "Moreover, under subdivision (b) of section 815, the immunity provisions of the California Tort Claims Act [(Gov. Code, tit. 1, div. 3.6)] will generally prevail over any liabilities established by statute. [Citations.] In short, sovereign immunity is the rule in California; governmental liability is limited to exceptions specifically set forth by statute." (*Cochran* v. *Herzog Engraving Co.* (1984) 155 Cal.App.3d 405, 409 [205 Cal.Rptr. 1].)

First, the Authority argues that there is no statutory duty to protect occupants of its properties from criminal acts of third persons. Next, the Authority contends that if duty does exist, it is immune from any liability, pursuant to several Government Code sections.

### a. *Statutory basis for liability*

"A public entity is liable for injury caused by a dangerous condition of its property if (1) the property was in a dangerous condition at the time of the

---

[2]All further statutory references will be to the Government Code unless otherwise specified.

injury; (2) the dangerous condition proximately caused the injury; (3) the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred; and (4) (a) a negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the condition or (b) the public entity had actual or constructive notice of the dangerous condition in time to have taken measures to protect against it. ([Citation]; Gov. Code, § 835.)" (*Slapin v. Los Angeles International Airport* (1976) 65 Cal.App.3d 484, 488 [135 Cal.Rptr. 296].)

A "dangerous condition" is a condition of property that creates a substantial risk of injury when such property is used with due care in a manner which is reasonably foreseeable. (§ 830, subd. (a); *Baldwin v. Zoradi* (1981) 123 Cal.App.3d 275, 294 [176 Cal.Rptr. 809]; *Slapin v. Los Angeles International Airport, supra,* 65 Cal.App.3d at p. 488.) ■ Whether a dangerous condition exists " 'is usually a question of fact and may only be resolved as a question of law if reasonable minds can come to but one conclusion.' [Citations.]" (*Peterson v. San Francisco Community College Dist.* (1984) 36 Cal.3d 799, 810 [205 Cal.Rptr. 842, 685 P.2d 1193]; *Rodriguez v. Inglewood Unified School Dist.* (1986) 186 Cal.App.3d 707, 720 [230 Cal.Rptr. 823].) However, section 830.2 provides that: "A condition is not a dangerous condition within the meaning of this chapter if the trial or appellate court, viewing the evidence most favorably to the plaintiff, determines as a matter of law that the risk created by the condition was of such a minor, trivial or insignificant nature in view of the surrounding circumstances that no reasonable person would conclude that the condition created a substantial risk of injury when such property or adjacent property was used with due care in a manner in which it was reasonably foreseeable that it would be used." (*Peterson v. San Francisco Community College Dist., supra,* 36 Cal.3d at p. 810, fn. 9; *Rodriguez v. Inglewood Unified School Dist., supra,* 186 Cal.App.3d at p. 720.)

■ Here, appellants allege that the "dangerous condition" of the property was inadequate security measures taken by respondents in face of the existence of a centralized location where drug dealers with violent tendencies congregated. They allege that respondents the City and the Authority failed to warn the residents, failed to transfer residents, failed to expel criminal tenants, failed to place security barriers, and failed to otherwise take appropriate security measures. We do not find to be minor or trivial the existence of persons with criminal tendencies who regularly congregate outside a housing unit, preventing access to the main entrance and regularly assaulting the tenants while they were using the housing unit in the manner

in which it was intended to be used. According to the complaint, appellants were at risk simply by virtue of their being assigned to the unit and became targets of increased hostility merely because they reported their difficulties to the Authority. We conclude that the pleading sufficiently alleges a dangerous condition to the property to overcome a demurrer.

We have reviewed the numerous cases cited by both parties which deal with the duty of public and private landlords to protect parties from criminal acts of third parties.[3] Most of the cases which find no liability are those in which the criminal conduct was an isolated or unexpected occurrence and could not have been expected to be controlled by the landlord, absent the implementation of drastic precautions. (See, e.g., *Susman* v. *City of Los Angeles* (1969) 269 Cal.App.2d 803 [75 Cal.Rptr. 240] [property damage incurred during Watts riots]; *Sykes* v. *County of Marin* (1974) 43 Cal.App.3d 158 [117 Cal.Rptr. 466] [evening attack on parent of child on school grounds]; *Stone* v. *State of California* (1980) 106 Cal.App.3d 924 [165 Cal.Rptr. 339] [gang members beat and rob attendee at state fair]; *Nola M.* v. *University of Southern California* (1993) 16 Cal.App.4th 421 [20 Cal.Rptr.2d 97] [rape on university campus].) Unlike the majority of these cases, here, however, we have allegations of the same perpetrators, the same location, and an escalating pattern of behavior over a period of time, with repeated reports to the landlord, visits by the landlord's personnel and an acknowledgment of the identity of the perpetrators by the policing personnel. In addition, there were prior allegation reports of the same behavior against previous tenants.

The case most factually similar to this one is *O'Hara* v. *Western Seven Trees, supra,* 75 Cal.App.3d 798, in which a woman sued the landlord for negligence and deceit when she was raped in her apartment building. Unbeknownst to her, a series of rapes had recently occurred in the building, and the police investigation had progressed to the point that a composite sketch of a single perpetrator had been developed. When the woman rented the apartment, she was not informed of the prior incidences. The appellate court reversed the order sustaining the demurrer to her complaint, stating: "Appellant was not the victim of a sudden unexpected outburst. Instead, she fell prey to the same type of criminal conduct which had repeatedly been inflicted upon other tenants by the same assailant, a person whose appearance and modus operandi were known to respondents. Not only did respondents allegedly fail to provide 'adequate security,' they did not warn appellant about the suspected assailant and they actually misrepresented the

---

[3]Section 820, subdivision (a) provides that "Except as otherwise provided by statute . . . , a public employee is liable for injury caused by his act or omission to the same extent as a private person."

security measures in force. Even without secure premises, knowledge of the suspect's mode of operation and a view of the composite drawings could have been useful to appellant. If she had known of the danger, she might not have rented an apartment in the complex, or she could have taken precautions based on a knowledge of the suspect's appearance and mode of operation." (75 Cal.App.3d at p. 803.)

Here, according to the allegations in the complaint, the Authority was well aware of the problems which had beset former occupants of the unit, and the City's police were aware of the identities of the perpetrators. Appellants were not warned about the difficulties they would encounter in simply entering and exiting their quarters, and it is unlikely they would have accepted housing in the unit had they known what awaited them.

In addition, courts have recognized that a special relationship may give rise to a duty by a public entity to protect a person falling within that special relationship. (*MacDonald* v. *State of California* (1991) 230 Cal.App.3d 319 [281 Cal.Rptr. 317].) A special relationship will be found where (1) there is a voluntary assumption by the public official of a duty toward the injured party; (2) where the public entity or official induced the victim's reliance on a promise, express or implied, that it would protect him, or (3) where the victim was dependent upon the public entity or official for protection because the official either created the peril or increased or changed the risk which would have otherwise existed by lulling the victim into a false sense of security and perhaps preventing other assistance from being sought. (*Davidson* v. *City of Westminster* (1982) 32 Cal.3d 197, 206-208 [185 Cal.Rptr. 252, 649 P.2d 894]; *Jackson* v. *Clements* (1983) 146 Cal.App.3d 983, 988 [194 Cal.Rptr. 553].)

Here, based upon the facts alleged, we conclude that the complaint sufficiently alleges facts from which a special relationship may be found to exist. The Authority assumed the duty of providing housing to appellants, and the appellants were apparently dependent upon the Authority to take responsibility for the hazards that existed within the project. Appellants reported the incidences of violence and harassment to the Authority and the police, and depended upon the Authority in order to secure a transfer to other quarters. It is clear from the complaint that the violence increased simply by virtue of appellants reporting the incidents to the Authority and police.

b. *The allegations in the complaint were sufficient*

The Authority also contends that the complaint does not contain sufficient allegations to identify the basis of statutory liability upon which appellants rely.

■ In order to state a cause of action for government tort liability, "every fact essential to the existence of statutory liability must be pleaded with particularity, including the existence of a statutory duty. (*Susman* v. *City of Los Angeles*, *supra*, 269 Cal.App.2d 803, 809.) Duty cannot be alleged simply by stating, 'defendant had a duty under the law'; that is a conclusion of law, not an allegation of fact. The facts showing the existence of the claimed duty must be alleged. [Citations.] Since the duty of a governmental agency can only be created by statute or 'enactment,' the statute or 'enactment' claimed to establish the duty must at the very least be identified." (*Searcy* v. *Hemet Unified School Dist.* (1986) 177 Cal.App.3d 792, 802 [223 Cal.Rptr. 206].)

■ Here, as noted in the previous section, appellants alleged in their complaint the detailed factual background of their occupation of the public housing property and the facts leading to their injuries and damages leading up to the death of the family members. They also identify numerous statutes upon which liability could be based: "80. Plaintiffs invoke the following California statutes as the basis for the defendants' liability for plaintiffs' state law claim: (a) Civil Code § 1714 (a) (negligence and duty of care); (b) Govt. Code § 835-835.4 (maintenance of dangerous condition); Civil Code § 3479-80 (nuisance); Civ. Code § 377 (wrongful death); Govt. Code § 814 (breach of contract); Govt. Code § 815.6 (failure to execute mandatory duty); and Govt. Code § 815.2 (government entity respondeat superior liability for all tortious acts and omissions of employees within the scope of employment)."

We find the complaint sufficiently identifies the factual and statutory bases upon which liability is premised. (*Lopez* v. *Southern Cal. Rapid Transit Dist.* (1985) 40 Cal.3d 780, 795-796 [221 Cal.Rptr. 840, 710 P.2d 907].)

c. *Statutory immunity*

The relevant code sections under which the Authority claims immunity are as follows:

Section 820.2 provides that: "Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused."

Section 845 provides that: "Neither a public entity nor a public employee is liable for failure to establish a police department or otherwise provide

police protection service or, if police protection service is provided, for failure to provide sufficient police protection service."

### (1) *Discretionary acts*

██ The Authority argues that the decision not to transfer or otherwise protect appellants was a discretionary act and therefore immune under section 820.2.

The first case to examine what constitutes a "discretionary" act under section 820.2 was *Johnson v. State of California* (1968) 69 Cal.2d 782 [73 Cal.Rptr. 240, 447 P.2d 352]. In *Johnson*, the Supreme Court rejected the state's claim of immunity from liability when a youth with homicidal tendencies was placed in a foster home and subsequently attacked his foster mother, who had not been informed about the youth's dangerous propensities. The *Johnson* court explained that section 820.2 immunity is reserved for "basic policy decisions" which have been expressly committed to certain branches of the government, as to which judicial interference would be "unseemly" and interfere with that body's decisionmaking process. (69 Cal.2d at pp. 793-794.) On the other hand, there is no immunity for lower level or ministerial decisions that merely implement the basic policy decisions. (*Id.* at pp. 796-797.) Since *Johnson*, the Supreme Court has revisited the issue of section 820.2 immunity several times, but has continued to follow the guidelines set forth in *Johnson*.

In *Tarasoff v. Regents of University of California* (1976) 17 Cal.3d 425 [131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166], a patient undergoing psychotherapy at a state university hospital made threats against a young woman during the course of psychotherapy. He was confined temporarily at a mental hospital, but was then released, and killed the girl. The girl's parents filed a complaint naming the therapists, among others. The causes of action against the therapists were dismissed on a demurrer by the trial court. The Supreme Court, relying on *Johnson, supra,* concluded that the therapists were not immune from liability for their failure to warn the girl and her parents because a "basic policy decision" was not involved. (17 Cal.3d at p. 446-447.)

In *Peterson v. San Francisco Community College Dist., supra,* 36 Cal.3d 799, a community college student was raped on campus and filed a lawsuit against the college district. Her complaint was dismissed on demurrer by the trial court. The Supreme Court, again relying on *Johnson* and *Tarasoff,* held

that the failure to warn does not involve a "basic policy decision" which section 820.2 was designed to protect. (36 Cal.3d at p. 815.)[4]

Similarly in *Lopez v. Southern Cal. Rapid Transit District, supra,* 40 Cal.3d 780, the court found a public transit district not immune from liability for injuries sustained by passengers when a fight broke out on a bus. The Supreme Court, relying on *Johnson* and *Tarasoff,* found that a bus driver's decision not to protect passengers is not a "basic policy decision" and does not "rise to the level of governmental decisions calling for judicial restraint"; and that therefore, no immunity existed. It noted, however, that it was not deciding the question of whether immunity would apply if all that were alleged were the district's negligence in failing to provide police personnel or armed guards on board its buses. (*Id.* at p. 794, quoting *Johnson v. State of California, supra,* 69 Cal.2d at p. 794.)

Recently, the Supreme Court reaffirmed the *Johnson* parameters in *Caldwell v. Montoya* (1995) 10 Cal.4th 972 [42 Cal.Rptr.2d 842, 897 P.2d 1320]. In *Caldwell,* a school superintendent, who was allegedly terminated on racial grounds, filed a complaint against the members of the school board, who had voted to terminate him. The trial court sustained a demurrer to the complaint on the basis that the school board's acts were covered under the immunity statute. The Court of Appeal reversed the trial court, finding that the allegations in the complaint were not sufficient to support a finding of immunity. The Supreme Court reversed the Court of Appeal, holding that allegations in the complaint regarding the acts of a school board in voting to terminate sufficiently described discretionary acts that were immune under section 820.2, and that the trial court therefore correctly sustained the demurrer.

*Caldwell* emphasized that *Johnson* requires a showing that the specific conduct giving rise to the suit involves an actual exercise of discretion, that is, a conscious balancing of risks and advantages, in order to qualify as an immune act. (10 Cal.4th at p. 983.) "The fact that an employee normally engages in 'discretionary activity' is irrelevant if, in a given case, the employee did not render a considered decision. [Citations.]" (*Johnson v. State of California, supra,* 69 Cal.2d at p. 795, fn. 8.)

Here, the matter is before us after ruling on a demurrer. The claim of immunity is an affirmative defense and the facts alleged in the complaint do

---

[4]*Peterson,* however, also involved a claim for failure to provide adequate police protection. The Supreme Court found the district was immune from this claim pursuant to section 845. (36 Cal.3d at p. 815.) We discuss section 845 immunity, *post,* at part 2.c.(2).

not, on their face, establish the existence of this claimed immunity. Unlike *Caldwell* v. *Montoya, supra*, 10 Cal.4th 972, the complaint here does not describe what decisionmaking process, if any, was involved in the failure to warn or the rejection of the transfer application. We have no doubt that this issue will be addressed in a more appropriate forum after the matter is remanded.

### (2) Police protection immunity

■ Next, the Authority alleges that the gravamen of the complaint is the contention that appellants were not afforded adequate police protection, and thus, the Authority is immune under section 845.

While the applicability of section 845 depends on how the case is ultimately presented at trial, the complaint alleges more than a failure to provide police protection.

Appellate court cases have reached varying conclusions regarding the scope of section 845 immunity, depending on the nature of the allegations of the complaint. From these cases, we glean the following: to the extent that appellants allege damages from the City's and the Authority's failure to (1) provide sufficient numbers of police personnel to patrol that particular housing project; (2) combat vandalism and terrorism by drug dealers (*Gates* v. *Superior Court* (1995) 32 Cal.App.4th 481, 490-493 [38 Cal.Rptr.2d 489]); (3) provide police protection at certain hours or in certain areas (*Slapin* v. *Los Angeles International Airport, supra*, 65 Cal.App.3d at p. 487; *Hernandez* v. *Southern California Rapid Transit Dist.* (1983) 142 Cal.App.3d 1063, 1067 [191 Cal.Rptr. 436]; (4) respond to a call in sufficient time (*Hartzler* v. *City of San Jose* (1975) 46 Cal.App.3d 6 [120 Cal.Rptr. 5]; *Antique Arts Corp.* v. *City of Torrance* (1974) 39 Cal.App.3d 588 [114 Cal.Rptr. 332]); (5) train officers adequately; or (6) rid the housing project of drug dealers (*Brownell* v. *Los Angeles Unified School Dist.* (1992) 4 Cal.App.4th 787, 796 [5 Cal.Rptr.2d 756]), section 845 immunity may be available.[5]

Section 845 immunity however, may not extend to the claims that the Authority failed to transfer appellants, failed to warn them about the problems in the particular unit (*Carpenter* v. *City of Los Angeles* (1991) 230

[5]The overwhelming majority of section 845 cases focus on police protection service by municipalities or the state. Here, it is unclear whether the City is named solely by virtue of its relationship as a landlord, or by virtue as the owner/operator of the Los Angeles Police Department.

Cal.App.3d 923, 935 [281 Cal.Rptr. 500]),[6] failed to arrest or reprimand the perpetrators once they were apprised of the nature of the offenses (see *Clemente* v. *State of California* (1980) 101 Cal.App.3d 374 [161 Cal.Rptr. 799], affd. (1985) 40 Cal.3d 202 [219 Cal.Rptr. 445, 707 P.2d 818]; *Mann* v. *State of California* (1977) 70 Cal.App.3d 773, 780 [139 Cal.Rptr. 82]), or failed to erect barriers to keep out intruders, and failed to evict those tenants who sold drugs and harassed other tenants.

In *Lopez* v. *Southern Cal. Rapid Transit District*, *supra*, 40 Cal.3d 780, the claim against the bus driver and the transit district was not interpreted to be a claim for inadequate police protection, and thus section 845 was not implicated. "Rather, the gravamen of plaintiffs' complaint is that the bus driver, who was already hired by RTD and was present on the scene and aware of the violent disturbance, did absolutely nothing to protect plaintiffs, but simply continued to drive the bus as if nothing was wrong." (*Id.* at p. 792.) The court continued, noting that any precautionary measures that the bus driver might have taken, which would have involved summoning the police, do not "involve the kind of 'budgetary and political decisions which are involved in hiring and deploying a police force.' Nor do they constitute 'police services' under any common understanding of that term." (*Id.* at p. 792.) The *Lopez* court, however, noted that it was not reaching the question of whether the Southern California Rapid Transit District was negligent in failing to provide security guards on its buses, because that failure was not alleged in the complaint. (*Id.* at p. 793, fn. 8.)

Because this matter is before us on demurrer and we have concluded that the pleading is broad enough to potentially avoid section 845, we do not address appellants' argument relating to special relationship and how it may affect this immunity. (*Hernandez* v. *Southern California Rapid Transit Dist.*, *supra*, 142 Cal.App.3d at p. 1067.) We leave that issue to be further litigated in the trial court.

(3) *Timeliness of action*

"Actions against a city pursuant to Government Code section 835 are subject to the claim requirements of the California Tort Claims Act. (§ 905.) Claims for personal injury or property damage must be presented not later

---

[6]The Authority erroneously cites *Hayes* v. *State of California* (1974) 11 Cal.3d 469 [113 Cal.Rptr. 599, 521 P.2d 855] for the broad proposition that a public entity has no duty to warn of criminal activity. The *Hayes* case involved an attack by unknown assailants on a stretch of beach known for its criminal activity. In concluding the government had no liability for its failure to warn the public of the likelihood of violent crime in the area, the *Hayes* court specifically limited its holding to "circumstances such as these." (*Id.* at p. 472.)

than six months after the accrual of the cause of action. (Gov. Code, § 911.2.)" (*Friends of H Street* v. *City of Sacramento* (1993) 20 Cal.App.4th 152, 168 [24 Cal.Rptr.2d 607].) Section 901 provides that: ". . . the date of the accrual of a cause of action to which a claim relates is the date upon which the cause of action would be deemed to have accrued within the meaning of the statute of limitations which would be applicable thereto if there were no requirement that a claim be presented to and be acted upon by the public entity before an action could be commenced thereon." (See *Loehr* v. *Ventura County Community College Dist.* (1983) 147 Cal.App.3d 1071, 1078 [195 Cal.Rptr. 576].)

 Appellants allege in their complaint that they filed such a claim on March 7, 1992, which was six months after the date of the fire.

The Authority claims that the filing of this claim precludes appellants from asserting any damages for acts or omissions which occurred *prior* to the fire, specifically those alleged in the seventh cause of action (for breach of quiet enjoyment) and the eighth cause of action (for nuisance).

The seventh cause of action alleges that the Authority breached the covenant of quiet enjoyment implied in its lease agreement by "[its] failure to construct barriers or take other adequate measures to keep the drug dealers and their associates from loitering and operating within the immediate vicinity of plaintiffs' home; its failure to provide and maintain adequate security on the premises so as to protect plaintiffs from the foreseeable risks of personal attacks and loss of personal property; and other negligent or improper conduct." The eighth cause of action for nuisance alleges that "The conditions of the Jordan Downs Housing Project, and in particular the area in the immediate vicinity of plaintiffs' home, constituted a nuisance within, but not limited to the meaning of Civil Code § 3479 et seq., in that said conditions were injurious to the health and safety of each plaintiff and the public at large, indecent and offensive to the senses of each plaintiff and the public at large, and interfered substantially with each plaintiff's comfortable enjoyment of the premises. [¶] . . . [¶] Defendants intentionally and willfully failed and refuse to abate the conditions rendering the premises a nuisance."

While the claims could be deemed untimely if they referred to only those acts resulting in injuries prior to the date of the fire, the claims are clearly not so limited. Damages are alleged arising from the fire and its aftermath. We find the seventh and eighth causes of action are not barred by the time limitations of the Tort Claims Act. Again, because this matter is before us on

a demurrer, we make no determination one way or the other about the validity of the claim for damages prior to the date of the fire. Those issues may have to be addressed by the trial court.

### d. *Loss of consortium*

The sixth cause of action for loss of consortium is labeled in the first amended complaint as "By all plaintiffs against all defendants." The Authority contended in its demurrer that only Juan Lopez, Juan Zuniga Sr. and Guadalupe Garcia have a potential recovery for the sixth cause of action because they are the only alleged spouses of the deceased. In their opposition to the demurrer, however, appellants concede that loss of consortium damages are sought only for spouses Lopez, Zuniga, Sr., and Garcia.

### e. *Emotional distress*

The Authority contends that only Guadalupe Garcia may recover under the fourth cause of action for emotional distress because she is the only plaintiff who witnessed the event and is closely related to the victims (her mother, Margarita Hernandez, died in the fire) as required by *Thing* v. *La Chusa* (1989) 48 Cal.3d 644 [257 Cal.Rptr. 865, 771 P.2d 814]. *Thing*, however, indicates that: "Absent exceptional circumstances, recovery should be limited to relatives residing in the same household, or parents, siblings, children and grandparents of the victim." (48 Cal.3d at p. 668, fn. 10.) Here, the complaint alleges that all the appellants were close relatives living in the same household. Therefore, a factual issue exists as to which appellants may qualify to bring claims for emotional distress.

The Authority also claimed in its demurrer that Juan Antonio Lopez, Andres Zuniga, Pablo Zuniga and Juan Zuniga, Jr., were precluded from recovering under the fourth cause of action for emotional distress because they did not observe the injury-producing event. Preliminarily we note that three of these plaintiffs, the Zunigas, were dismissed prior to the hearing on the demurrer.

As far as Juan Antonio Lopez, the complaint alleges that he is the "widower of the deceased Marta Zuniga Lopez; father of the deceased Juan Carlos Lopez, Claudia Lopez and Veronica Lopez; and grandson-in-law of the deceased Margarita Medina Hernandez" and that he was "a resident of the Jordan Downs Housing Project at all time herein material." It also alleges that he arrived "after paramedics and fire department personnel were on the scene" and "witnessed the emergency personnel's futile efforts to rescue the arson fire victims and extinguish the fire," and saw the body of his daughter, Veronica Lopez, carried out of the building.

The Authority cites *Fife* v. *Astenius* (1991) 232 Cal.App.3d 1090 [284 Cal.Rptr. 16] to support its argument that Juan Antonio Lopez cannot recover for emotional distress because he did not arrive at the residence until after emergency personnel were already at the scene.

In *Fife*, a family who heard a nearby vehicle collision went outside their house, climbed over a wall, and found a family member inside one of the vehicles involved in the crash. Because the family had not contemporaneously observed the vehicle collision, they were precluded from recovering under a negligent infliction of emotional distress cause of action. (*Fife* v. *Astenius*, *supra*, 232 Cal.App.3d at pp. 1092-1093, citing *Thing* v. *La Chusa*, *supra*, 48 Cal.3d at p. 653.)

Here, however, although the fire department and paramedics were on the scene when Lopez arrived, the complaint alleges that he witnessed rescue efforts and futile attempts to extinguish the fire. It appears that he arrived while the fire was still causing damage, and possibly still causing injury to his many relatives inside. This case may therefore be distinguished from *Fife*, and, based on the allegation of the complaint, Lopez may proceed as a plaintiff in the fourth cause of action.

### f. *The federal civil rights claim*

42 United States Code section 1983 (hereinafter section 1983) provides that: "Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

In its demurrer, the Authority argued that no cause of action was stated under section 1983 for the following reasons: (1) there was no action by a person under "color of law"; (2) no custodial relationship was created between appellants and the Authority; (3) there was no violation of a federal statute, and (4) California tort law provides adequate state remedies.

Appellants contend that they adequately stated a cause of action under this statute because they alleged the Authority and the City failed to comply with federally mandated contractual obligations and failed to provide appellants with grievance procedures to challenge the Authority's refusal to transfer them or relieve the dangerous conditions.

To sustain an action under section 1983, a plaintiff must show that (1) he or she possessed a constitutional right of which he or she was

deprived; (2) that the municipality had a policy which amounted to "deliberate indifference" to the plaintiff's constitutional right; and (3) that action pursuant to that policy caused a violation of that constitutional right. (*Canton v. Harris* (1989) 489 U.S. 378, 389-391 [103 L.Ed.2d 412, 426-428, 109 S.Ct. 1197]; *Monell* v. *New York City Dept. of Social Services* (1978) 436 U.S. 658, 691 [56 L.Ed.2d 611, 635-636, 98 S.Ct. 2018]; *Oviatt By and Through Waugh* v. *Pearce* (9th Cir. 1992) 954 F.2d 1470, 1474.)

### (1) *Deprivation of a constitutional right*

The Authority contends that appellants have not shown that they have a constitutional right to safe and sanitary public housing. Primarily, they point to the language of 42 United States Code section 1437d(*l*), which provides that "Each public housing agency shall utilize leases which [¶] . . . [¶] (2) obligate the public housing agency to maintain the project in a decent, safe, and sanitary condition. . . ." The Authority argues that while this obligates them to provide clauses in their leases that safe and sanitary housing will provided, it does not amount to a constitutional right for those services.

 Next, the Authority argues that appellants cannot show they were deprived of their liberty interest, in violation of the Fourteenth Amendment because they were not in custody when injured.

"Act[ing] in callous disregard [of a plaintiff's] physical security [is] a liberty interest protected by the Constitution." (*Wood* v. *Ostrander* (9th Cir. 1989) 879 F.2d 583, 589, quoting *Ingraham* v. *Wright* (1977) 430 U.S. 651, 674-675 [51 L.Ed.2d 711, 732-733, 97 S.Ct. 1401, 1414].)

While the United States Supreme Court has gone only as far as to allow recovery under section 1983 for deprivation of a liberty interest to state prison inmates (*Estelle* v. *Gamble* (1976) 429 U.S. 97 [50 L.Ed.2d 251, 97 S.Ct. 285]) and those involuntarily committed to state mental institutions (*DeShaney* v. *Winnebago Cty. Soc. Servs. Dept.* (1989) 489 U.S. 189 [103 L.Ed.2d 249, 109 S.Ct. 998] [no liability for county social workers when child in father's custody was beaten, even though county had received complaints and requests to remove child from father's custody]), developing law in the Ninth Circuit has expanded the right to include those placed in danger created by virtue of the actions of a state employee. There also exists a "danger creation" exception to the rule that members of the public have no constitutional right to sue state employees who fail to protect them against harm inflicted by third parties. (*L.W.* v. *Grubbs* (9th Cir. 1992) 974 F.2d 119, 121.) This exception "necessarily involves affirmative conduct on the part of the state in placing the plaintiff in danger. [Citations.]" *(Id.* at p. 121.) Thus,

a nurse at a state institution for juvenile offenders could state a section 1983 claim for violation of her right to liberty for being placed in unguarded proximity to an inmate who was a known violent sex offender and who ultimately raped her. (*Id.* at p. 123.) Similarly, in another Ninth Circuit case, a woman riding in a car which was stopped by the police and who was left stranded in a high crime area by the police and subsequently raped, was allowed to state a section 1983 claim because the jury could have found that the officer had affirmatively created the particular danger that exposed her to the violence. (*Wood* v. *Ostrander, supra,* 879 F.2d at pp. 589-590.)

In its most recent pronouncement on this issue, the Ninth Circuit explained in *U.S.* v. *Koon* (9th Cir. 1994) 34 F.3d 1416 (cert. granted in part as to sentencing issues only (1995) __ U.S. __ [132 L.Ed.2d 920, 116 S.Ct. 39]): "The right which is established in these substantive due process cases is not the narrow right to be protected from constitutional wrongs committed by third persons. Rather, because the individual has been placed in a dependent and helpless position, she is entitled to the broader right to be protected from *harm.*" (34 F.3d at p. 1447, italics in original.)

By analogy, we find that the pleading alleges a deprivation of appellants' constitutional right to liberty by virtue of their sheer inability to enter and exit their residence without fear of assault and their inability to obtain assistance after reporting their difficulties. Appellants allege that the Authority placed them in the particular unit, which they knew to be in a dangerous locale, and investigated their complaints, but still did nothing. Because we find that appellants have adequately alleged the violation of their constitutional right to liberty, we do not need to reach the issue of whether there is a federal statutory right to safe and sanitary public housing.

### (2) *Policy*

"The existence of a policy, without more, is insufficient to trigger local government liability under section 1983. *City of Canton* [(1989)] 489 U.S. [378, 388-389 (103 L.Ed.2d 412, 426-427, 109 S.Ct. 1197, 1204).] Under *City of Canton,* before a local government entity may be held liable for failing to act to preserve a constitutional right, plaintiff must demonstrate that the official policy 'evidences "a deliberate indifference"' to his constitutional rights. [Citation.] This occurs when the need for more or different action 'is so obvious, and the inadequacy [of the current procedure] so likely to result in the violation of constitutional rights, that the policymakers . . . can reasonably be said to have been deliberately indifferent to the need.' [Citation.] Whether a local government entity has displayed a policy of

deliberate indifference is generally a question for the jury. [Citation.]" (*Oviatt By and Through Waugh* v. *Pearce*, *supra*, 954 F.2d at pp. 1477-1478.)

 The Authority's argument that there was no "action" by a governmental unit upon which to base a claim is without merit. Even if the governmental agency takes no action, a conscious choice to continue to do nothing constitutes a policy of inaction upon which a section 1983 claim may be based. (*Oviatt By and Through Waugh* v. *Pearce*, *supra*, 954 F.2d at p. 1477.) For example, the United States Supreme Court has held that inadequate police training may be the basis for a section 1983 claim where it amounts to deliberate indifference to the rights of persons with whom the police come into contact. (*Canton* v. *Harris*, *supra*, 489 U.S. at p. 388 [103 L.Ed.2d at p. 426].) The facts of this case, as pled, raise a factual issue for the trier of fact to address.

(3) *Existence of state remedies*

 The Authority contends that pursuant to *Parratt* v. *Taylor* (1981) 451 U.S. 527, 541-544 [68 L.Ed.2d 420, 432-434, 101 S.Ct. 1908], the existence of adequate state remedies precludes the maintaining of a section 1983 action. This argument is without merit.

"*Parratt* [citation] and its progeny hold that a deprivation of liberty or property is not cognizable under section 1983 when a state's post-deprivation remedies are adequate to protect a victim's procedural due process rights. [Citation.] However, '[t]he *Parratt* line of cases does not focus on the relevance of procedural protections to alleged violations of *substantive* constitutional rights.' (*Smith* v. *City of Fontana*, 818 F.2d 1411, 1414 (9th Cir. 1987) . . . . Accordingly, the existence of state remedies is irrelevant and the *Parratt* bar inapplicable where the plaintiff alleges a violation of a substantive right under either the Bill of Rights or the due process clause. [Citations.] [¶] . . . [¶] . . . The relevant inquiry is whether the deprivation is sufficiently serious that ' "the constitutional line ha[s] been crossed" so as to constitute a deprivation of substantive due process.' [Citation.]" (*Wood* v. *Ostrander*, *supra*, 879 F.2d at pp. 588-589, fn. omitted;[7] see also *Wright* v. *Roanoke Redev. & Housing Auth.* (1987) 479 U.S. 418, 429 [93 L.Ed.2d 781, 791-792, 107 S.Ct. 766].) The facts alleged here cross the line.

---

[7]In *Wood*, the Ninth Circuit distinguished its prior opinion in *Rutledge* v. *Arizona Bd. of Regents* (9th Cir. 1981) 660 F.2d 1345, upon which the Authority also relies. (879 F.2d at p. 589.)

### 3. *The City as a Defendant*

#### a. *Failure to obtain an order of dismissal*

In the interests of justice and to avoid delay, we deem the order sustaining the demurrer to incorporate an order of dismissal as to the City and treat the notice of appeal as applying to that judgment. (*Cohen* v. *Equitable Life Assurance Society* (1987) 196 Cal.App.3d 669 [242 Cal.Rptr. 84]; *Wilson* v. *Household Finance Corp.* (1982) 131 Cal.App.3d 649 [182 Cal.Rptr. 590].)

The City also argues that by not addressing the City's demurrer specifically in its opening brief, appellants have abandoned their action against the City. We disagree. It is clear that appellants are addressing both parties and dismissal of each.

#### b. *The basis for the City's liability*

In order to be liable under section 835, the public entity must be the owner or in control of the property at the time of the injury. (*Tolan* v. *State of California* ex rel. *Dept. of Transportation* (1979) 100 Cal.App.3d 980, 983 [161 Cal.Rptr. 307]; i.e., *Searcy* v. *Hemet Unified School Dist.*, *supra*, 177 Cal.App.3d at p. 798.) There is no dispute about the Authority's ownership or control of the Jordan Downs property.

The Housing Authorities Law (Health & Saf. Code, § 34200 et seq.) creates a separate public corporation known as a "Housing Authority" in every city in the state. A city which has declared the necessity for a housing authority to function has certain powers and may enter into cooperative contracts with the housing authority. (Health & Saf. Code, § 34500 et seq.) The Housing Authority of the City of Los Angeles was organized to function as a state agency and not an agent of the city in which it functions. (*Housing Authority* v. *City of L.A.* (1952) 38 Cal.2d 853, 861 [243 P.2d 515].) "Each functioning body, the city and the housing authority, is a separate body politic vested with specific duties and powers under the Housing Authorities Law and Housing Cooperation Law to effect a state objective. . . . In pursuing the state objective each is governed by the state law and neither may exercise powers not vested or recognized by that law. The city and housing authority function as administrative arms of the state in pursuing the state concern effecting the legislative objective." (*Id.* at p. 862.)

The Authority has the sole responsibility for the operation of the housing projects located within the boundaries of the City. (Health & Saf. Code, §§ 34311, 34312.) However, the City is granted specific powers, such as to

lease, dedicate, or sell any property to the housing authority; and to furnish playground, educational, water, sewer, drainage facilities, roadways, sidewalks, and all things necessary or convenient to aid and cooperate in the planning, undertaking, construction or operation of housing projects. (Health & Saf. Code, §§ 34509-34519.)

Section 895.2 provides that: "Whenever any public entities enter into an agreement [under which a public entity undertakes to perform any functions, service or act with or for any other public entity], they are jointly and severally liable upon any liability which is imposed by any law other than this chapter upon any one of the entities or upon any entity created by the agreement for injury caused by a negligent or wrongful act or omission occurring in the performance of such agreement."

Appellants named the City in their complaint and offer as the basis for its liability the allegations that: "27. Defendant City of Los Angeles (hereinafter 'City') . . . is responsible for the actions, policies, practice and customs of the Los Angeles Police Department (hereinafter 'LAPD'), as well as the hiring, screening, training, supervising, controlling and disciplining of LAPD officers, other employees and agents. On information and belief, defendant City is also responsible for the actions, policies, practice and customs of defendant Housing Authority and its employees and agents; controls and supervises defendant Housing Authority, acts jointly with it in executing its functions and meeting its legal obligations; and accordingly, was plaintiffs' landlord and was responsible for assuring that the actions of the Housing Authority's employees and agents complied with the laws of the State of California, and its legal obligations as a landlord. Defendant City is sued on Causes of Action 1 through 9 in its own right and on the basis of respondeat superior. [¶] . . . [¶] 34. On information and belief, defendant Housing Authority is a quasi-independent organization which operates under the auspices and control of defendant City of Los Angeles, which is responsible for appointing the Housing Authority's Executive Director and approving its budget, and thus operates jointly with it in administering its policy, procedures and practice as a landlord."

Although the City cites authority for the proposition that it is not an indispensable party to a lawsuit brought against the Authority where the Authority is the responsible administrator for the property involved (*Banks* v. *Housing Authority* (1953) 120 Cal.App.2d 1, 22 [260 P.2d 668]), it offers no authority for the proposition that the City may not be named as a defendant in an action concerning a housing authority's dereliction of duty.

Based upon the facts alleged by appellants, we find ample justification for allowing the City to be named as a defendant in this action.

## DISPOSITION

The judgment (order of dismissal) is reversed as to both respondents, the City and the Authority. The superior court is directed to enter an order overruling the demurrers. Appellants are to recover their costs on appeal.

Epstein, Acting P. J., concurred.

**KLEIN (Brett), J.*—I Dissent.**

Whether this terrorist firebombing would have been deterred or prevented by even extraordinary protective measures is anyone's guess. Causation must be shown by evidence; guesses are insufficient. I would affirm the order dismissing the complaint.

Respondents' petitions for review by the Supreme Court were denied April 11, 1996. Kennard, J., and George, J., were of the opinion that the petitions should be granted.

---

*Judge of the Municipal Court for the Los Angeles Judicial District sitting under assignment by the Chairperson of the Judicial Council.