[No. C013852. Third Dist. Oct. 21, 1993.]

FRIENDS OF H STREET et al., Plaintiffs and Appellants, v.
CITY OF SACRAMENTO, Defendant and Respondent;
CHARLES O. GREENLAW et al., Interveners and Respondents.

**COUNSEL**

Adamo & Nevares and John B. Adamo for Plaintiffs and Appellants.

Sharon Siedorf Cardenas, City Attorney, William P. Carnazzo, Assistant City Attorney, and Leslie R. Lopez, Deputy City Attorney, for Defendant and Respondent.

Charles O. Greenlaw and Charles E. Shoemaker, in pro. per., for Interveners and Respondents.

**OPINION**

**NICHOLSON, J.**—This is the second of two appeals challenging the manner in which the City of Sacramento (the City) maintains and manages H Street. In *Hutchinson* v. *City of Sacramento* (1993) 17 Cal.App.4th 791 [21 Cal.Rptr.2d 779], an appeal resulting from two property owners' successful petition for writ of mandate, we held the City's authority to decide whether and when to reevaluate an established speed limit implicated its legislative power and was not subject to review as a ministerial act. We reversed the order issuing the writ and remanded the matter to the trial court with

directions to enter judgment denying the writ. In this appeal, we conclude plaintiffs fail to state a cause of action for nuisance and cannot amend their complaint to allege other claims against the City. We therefore affirm the judgment of dismissal.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Friends of H Street, also known as the H Street Association, is an unincorporated association comprised principally of H Street residents living between Alhambra Boulevard and 56th Street. Plaintiffs Grant L. Hutchinson, F. Eugene Scott, and Maria Nicholas Kelly own real property which fronts upon or abuts H Street.

After years of complaints by H Street residents, in 1989 the City commissioned a study of traffic conditions as part of the H Street (East Sacramento) Neighborhood Preservation Transportation Plan. A draft report was issued on March 29, 1991, followed by a final report on July 28, 1991. In November 1991, the City's department of public works, transportation division, recommended that the city council take no action "to alleviate any of the conditions identified in either the above-referenced draft or final reports, other than to conduct 'further study'. Defendant's City Council adopted that recommendation."

In January 1992, plaintiffs filed a complaint for nuisance seeking injunctions to force the City to reduce the traffic speed and volume on H Street. The complaint alleges in part: "9. At all times herein mentioned, defendants, and each of them, have occupied, utilized, maintained, and operated H Street in East Sacramento, a stretch of roadway approximately 1.7 miles in length encompassing the area between Alhambra Boulevard to 56th Street, in such a manner that: (a) the street is used by excessive, freeway-level volumes of traffic; (b) the permitted, and actual speed of traffic is excessive; (c) the noise created by the excessive volume and speed of traffic is twice the maximum standard established by the City for residential neighborhoods. The excessive noise disrupts plaintiffs' sleep, other normal indoor activities, and most out-of-door activities; (d) the street is repeatedly and illegally used by commercial conveyances, including City-owned conveyances, exceeding 10,000 pounds; (e) the ability of plaintiffs to gain ingress to or egress from their driveways is substantially impaired and rendered hazardous; (f) plaintiffs are exposed to high concentrations of carbon monoxide and other hazardous vehicle emissions; (g) plaintiffs' comfortable enjoyment of their homes and property is substantially impaired; (h) the value of plaintiffs' property is diminished; (i) plaintiffs are exposed to injury and fatality accident rates more than twice the state average for similar streets; (j)

plaintiffs are exposed to noxious and malodorous fumes and soot; (k) plaintiffs are exposed to excessive glare from headlights at night and in the early morning hours; and (l) plaintiffs' properties are exposed to excessive litter from passing cars." Plaintiffs allege "[t]he nuisance created by the actions and inaction of defendants, . . . is continuing in nature because it can be discontinued or abated."

Plaintiffs seek injunctive relief to abate the alleged nuisance, requesting "a preliminary and permanent injunction enjoining defendants, . . . from: (a) continuing to designate H Street between Alhambra Boulevard and 56th Street as other than a 'minor local' or 'local' street; (b) continuing to designate H Street between Alhambra Boulevard and 56th Street as a so-called 'through street;' (c) operating the street in such a manner as to permit its use by a volume of traffic which exceeds the 'environmental capacity' (as that term is defined in the City-issued Preservation Plan study) of the street; (d) operating the street in such a manner that noise levels exceed 60 decibels as measured 75 feet from the center line of the street; (e) operating the street in such a manner that the concentrations of carbon monoxide and other vehicle emissions exceed those on a properly designated and operated local street; (f) operating the street in such a manner that the injury and fatality accident rate exceeds the state average for similar streets; (g) operating the street in such a manner that abutting residents' ability to enter and exit their driveways is substantially impaired and rendered hazardous; and (h) continuing to facilitate the use of the street by vehicles exceeding 10,000 pounds and by vehicles traveling in excess of 25 miles per hour."

The City demurred to plaintiffs' complaint. Shortly thereafter, on April 6, 1992, Charles O. Greenlaw and Charles E. Shoemaker, owners and residents of property situated north of H Street, filed an amended complaint in intervention. The interveners allege the relief sought by plaintiffs would interfere with their business and personal use of the H Street arterial. Interveners joined in the City's demurrer. Mercy General Hospital filed an amicus curiae brief in support of the City's demurrer.

The court sustained the City's demurrer without leave to amend, stating in its tentative decision: "The routing of traffic on city streets is basically a legislative function. To the extent that traffic is rerouted from H Street, it must be routed onto another street or highway. The selection among alternatives is a legislative act. Every resident on a city street would be happier if all through traffic was sent to someone else's neighborhood. The City cannot please all its residents, and the Court will not try to do so." At the hearing the court affirmed the tentative ruling "for all of the reasons that

were expressed by the demurr[ing] parties." The court indicated it was "convinced that no cause of action for a nuisance will lie in this circumstance when the traffic on a highway becomes a difficult thing to bare [*sic*] for the residents." This appeal ensued.

DISCUSSION

I

*No Cause of Action Against the City for Nuisance*

The acts alleged by plaintiffs do not state a cause of action against the City under the circumstances of this case. Plaintiffs' pleadings are insufficient because, as argued in the trial court, the City's acts are authorized by statute, and the nuisance claim is barred. (Civ. Code, § 3482.)[1] Moreover, as we have stated in the past, courts lack power to compel legislative bodies to perform legislative acts in a particular manner. (*Board of Supervisors* v. *California Highway Commission* (1976) 57 Cal.App.3d 952, 961 [129 Cal.Rptr. 504].)

A. *Actions to Abate a Public Nuisance:*

Section 3479 describes the acts which constitute a nuisance as "[a]nything which is injurious to health, or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, or unlawfully obstructs the free passage or use, in the customary manner, of any . . . street, or highway . . . ."[2] Plaintiffs allege the City's maintenance and operation of H Street is a nuisance within the meaning of section 3479 because "it is injurious to plaintiffs' health and safety, and the health and safety of their families, it is offensive to the senses, it interferes with the comfortable enjoyment of plaintiffs' properties, it has diminished the value of plaintiffs' properties, and it substantially interferes with plaintiffs' ability to gain ingress to or egress from their properties."

■ A private person has no direct remedy to abate a public nuisance unless the public nuisance is a private nuisance as to that person. (11 Witkin,

---

[1]Civil Code section 3482 states: "Nothing which is done or maintained under the express authority of a statute can be deemed a nuisance."

All statutory references are to the Civil Code unless otherwise indicated.

[2]Government Code section 815, which limits government tort liability, does not bar nuisance actions against public entities to the extent such actions satisfy the requirements of Civil Code section 3479. (*Nestle* v. *City of Santa Monica* (1972) 6 Cal.3d 920, 936-937 [101 Cal.Rptr. 568, 496 P.2d 480].)

Summary of Cal. Law (9th ed. 1990) Equity, § 144, p. 824.) A public nuisance "affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon individuals may be unequal." (§ 3480.) A private nuisance is defined as every nuisance not included in the definition of a public nuisance. (§ 3481.) The essence of a private nuisance is an interference with the use and enjoyment of land. (*Venuto* v. *Owens-Corning Fiberglas Corp.* (1971) 22 Cal.App.3d 116, 124-125 [99 Cal.Rptr. 350], quoting Prosser on Torts (3d ed.) p. 611 and fn. 91.) Impairment of an owner's right of access to and from an abutting public street constitutes both a private and public nuisance. (*Kitzman* v. *Newman* (1964) 230 Cal.App.2d 715, 725-726 [41 Cal.Rptr. 182].) Plaintiffs allege the City's acts, including impairment of ingress and egress, were public and private nuisances.

B. *The Section 3482 Defense:*

■ As we stated, section 3482 bars an action for nuisance against a public entity where the alleged wrongful acts are expressly authorized by statute. The Supreme Court has "consistently applied a narrow construction to section 3482 and to the principle therein embodied." (*Greater Westchester Homeowners Assn.* v. *City of Los Angeles* (1979) 26 Cal.3d 86, 100 [160 Cal.Rptr. 733, 603 P.2d 1329].)

" 'A statutory sanction cannot be pleaded in justification of acts which by the general rules of law constitute a nuisance, unless the acts complained of are authorized by the *express terms* of the statute under which the justification is made, *or by the plainest and most necessary implication* from the powers expressly conferred, *so that it can be fairly stated that the legislature contemplated the doing of the very act which occasions the injury.*' " (*Hassell* v. *San Francisco* (1938) 11 Cal.2d 168, 171 [78 P.2d 1021], quoting 46 C.J., p. 674, italics added; accord, *Greater Westchester Homeowners Assn.* v. *City of Los Angeles, supra,* 26 Cal.3d at p. 101.) "A requirement of 'express' authorization embodied in the statute itself insures that an unequivocal legislative intent to sanction a nuisance will be effectuated, while avoiding the uncertainty that would result were every generally worded statute a source of undetermined immunity from nuisance liability." (*Varjabedian* v. *City of Madera* (1977) 20 Cal.3d 285, 291 [142 Cal.Rptr. 429, 572 P.2d 43].) However, although acts authorized by statute cannot give rise to nuisance liability, the *manner* in which those acts are performed may constitute a nuisance. (*Venuto* v. *Owens-Corning Fiberglas Corp., supra,* 22 Cal.App.3d at p. 129.) Plaintiffs assert the court erred in reading the City's statutory authority too broadly.

The *Hassell* test of statutory authorization "requires a particularized assessment of each authorizing statute in relation to the act which constitutes

the nuisance." (*Varjabedian* v. *City of Madera, supra*, 20 Cal.3d at p. 291, fn. 6.) Thus, generalizations drawn from statutes authorizing one type of public act may not apply to statutes authorizing other types of public acts. (*Ibid.*; see *Greater Westchester Homeowners Assn.* v. *City of Los Angeles, supra*, 26 Cal.3d at p. 102.)

■ Here, the bounds of the City's authority to maintain and manage H Street are defined in several statutes. The state's plenary power and preemption of the entire field of traffic control are set forth in Vehicle Code section 21.[3] (*Rumford* v. *City of Berkeley* (1982) 31 Cal.3d 545, 550 [183 Cal.Rptr. 73, 645 P.2d 124].) The Legislature delegates to local governments the authority to regulate traffic within their jurisdictions by specified means, including the use of traffic control devices. (Veh. Code, § 21100.)[4] The Improvement Act of 1911 (Sts. & Hy. Code, § 5000 et seq.) authorizes cities to maintain and improve their streets.

"All streets, places, public ways, . . . owned by any city, open or dedicated to public use, . . . are open public streets, places, public ways, or property or rights-of-way owned by the city, for the purposes of this division, *and the legislative body of the city . . . is hereby invested with jurisdiction to order to be done therein, . . . any of the work mentioned in this division . . . .*" (Sts. & Hy. Code. § 5100, italics added.)

Thus, "[w]henever *in the opinion of the legislative body* the public interest or convenience may require, it may order . . . [¶] . . . (o) [a]ll other work which may be deemed necessary to improve the whole or any portion of those streets, places, public ways, property, easements, or rights-of-way owned by the city." (Sts. & Hy. Code, § 5101, italics added.) The legislative body may, *in its discretion*, spend the city's ordinary annual income to "[e]stablish, lay out, alter, keep open, improve, and repair streets, sidewalks, alleys, tunnels, and other public highways . . ." and "[*g*]*enerally manage and control all such highways, tunnels, and places.*" (Gov. Code, § 40401, italics added.) However, "[t]he degree and type of maintenance for each highway, or portion thereof, shall be determined *in the discretion of the authorities charged with the maintenance thereof*, taking into consideration traffic requirements and moneys available therefor." (Sts. & Hy. Code,

[3]Vehicle Code section 21 states: "Except as otherwise expressly provided, the provisions of this code are applicable and uniform throughout the State and in all counties and municipalities therein, and no local authority shall enact or enforce any ordinance on the matters covered by this code unless expressly authorized therein."

[4]Vehicle Code section 21100 provides, in relevant part: "Local authorities may adopt rules and regulations by ordinance or resolution regarding the following matters: [¶] . . . (d) Regulating traffic by means of official traffic control devices meeting the requirements of Section 21400."

§ 27.) Based on the foregoing, we conclude the City's authority to act—or not act—in the manner complained of is established "by the plainest and most necessary implication from the powers expressly conferred" by the legislative scheme. (*Hassell* v. *San Francisco, supra,* 11 Cal.2d at p. 171.)

The California courts have consistently held alleged nuisances arising from the construction, operation and maintenance of streets and highways to be within the protection of section 3482. (See *Harding* v. *State of California ex rel. Dept. of Transportation* (1984) 159 Cal.App.3d 359 [205 Cal.Rptr. 561]; *Orpheum Bldg. Co.* v. *San Francisco Bay Area Rapid Transit Dist.* (1978) 80 Cal.App.3d 863 [146 Cal.Rptr. 5]; and *Lombardy* v. *Peter Kiewit Sons' Co.* (1968) 266 Cal.App.2d 599 [72 Cal.Rptr. 240], disapproved on other grounds in *Southern Cal. Edison Co.* v. *Bourgerie* (1973) 9 Cal.3d 169, 175 [107 Cal.Rptr. 76, 507 P.2d 964].)

In *Lombardy*, plaintiff property owners sought damages for nuisance from the state and a construction company, alleging they suffered mental, physical and emotional distress, irritation and worry as a result of the construction and operation of the San Gabriel River Freeway in Los Angeles County. (*Lombardy* v. *Peter Kiewit Sons' Co., supra,* 266 Cal.App.2d at pp. 601, 605.) The court found state highways are constructed and maintained under express statutory authority. Citing section 3482, it affirmed the judgment entered after the court sustained demurrers to plaintiffs' complaint. The court observed that "[a]ll householders who live in the vicinity of crowded freeways, highways and city streets suffer in like manner and in varying degrees. The roar of automobiles and trucks, the shock of hearing screeching brakes and collisions, and the smoke and fumes which are in proportion to the density of the motor vehicle traffic all contribute to the loss of peace and quiet which our forefathers enjoyed before the invention of the gas engine. . . . [¶] The conditions of which appellants complain are obnoxious to all persons who live in close proximity to the state's freeways but they must be endured without redress." (266 Cal.App.2d at p. 605.)

In *Orpheum Bldg. Co.* v. *San Francisco Bay Area Rapid Transit Dist., supra,* 80 Cal.App.3d 863, the court affirmed a grant of nonsuit on a cause of action for negligence arising from construction of a BART station in the street adjacent to plaintiffs' property. The court held the Legislature expressly empowered BART to use the public streets for construction, and plaintiffs "failed to show that any acts of BART were not authorized or necessary for the construction of the Civic Center Station." (*Id.* at pp. 875-876.) Nor was there evidence the construction work done pursuant to statute was carried out in an unreasonable manner. (*Id.* at p. 876.)

The court in *Harding* v. *State of California ex rel. Dept. of Transportation, supra,* 159 Cal.App.3d 359, relied on *Lombardy* to hold plaintiffs failed to

state a cause of action for nuisance. The complaint alleged construction of a 23-foot embankment in front of plaintiffs' home resulted in "a loss of air, causing temperatures in plaintiffs' home to increase and making it untenable as a residential property." (*Id.* at p. 362.) Plaintiffs also claimed "loss of light resulting in a loss of plaintiffs' vegetable garden and alleged damage due to dust, dirt, straw and highway debris which caused respiratory problems for plaintiffs, and further damage due to noise from the freeway." (*Ibid.*) The court determined the state had authority to construct and maintain its highways, and Streets and Highways Code section 215.5 gave it express authority to construct the noise attenuation barrier at issue in the case. (159 Cal.App.3d at p. 362.) There were apparently no allegations the barrier was constructed in an unreasonable manner or was unreasonably noisy or dirty. (*Id.* at p. 363.)

In *Harding*, as in the case before us, plaintiffs cited *Varjabedian* v. *City of Madera, supra,* 20 Cal.3d 285 and *Greater Westchester Homeowners Assn.* v. *City of Los Angeles, supra,* 26 Cal.3d 86, in support of their argument section 3482 did not bar the nuisance claim. The *Harding* court rejected both cases, stating: "*Varjabedian* held that although a city was authorized by statute to construct sewage plants, the statute did not *expressly* authorize the odors emanating from the plant and thus it constituted a nuisance. Presumably, because dust and debris are not expressly authorized by the Streets and Highways Code, plaintiffs would have us find that they constitute a nuisance. Although *Varjabedian* distinguished *Lombardy*, it did so on the basis of the *Hassel*[*l*] test which requires particularized inquiry into each statute to determine whether the Legislature intended to sanction the nuisance and found that the *Lombardy* analysis of the highway construction statute was not applicable to municipal water treatment operations. (*Varjabedian, supra,* at p. 291, italics in original, fn. omitted; accord, [*Greater Westchester, supra,*] 26 Cal.3d [at p.] 102 . . . [*Lombardy* analysis not applied in airport noise context].)" (*Harding, supra,* 159 Cal.App.3d at p. 363.)

We reject *Varjabedian* and *Greater Westchester* on the same basis. The Vehicle Code and Streets and Highways Code authorize the City to regulate traffic within its jurisdictions, and, in its discretion, expend funds to generally manage and control its streets. (Veh. Code, § 21101; Sts. & Hy. Code, § 27.) Although the relevant statutes do not expressly authorize the City to operate its streets in a manner which generates traffic, noise, fumes, litter, and headlight glare, as stated in *Lombardy*, such loss of peace and quiet is a fact of urban life which must be endured by all who live in the vicinity of freeways, highways, and city streets.

The court in *Varjabedian* applied the *Hassell* test, and determined none of the Government Code statutes under which the city claimed to act mentioned

the possibility of noxious emanations from the sewage treatment plant. More importantly, the court observed that one object of sewage plant construction was "to *remove* harmful and obnoxious effluents from the environment." (*Varjabedian* v. *City of Madera, supra*, 20 Cal.3d at p. 292, italics in original.)

Similarly, in *Greater Westchester*, the court rejected defendant's argument governmental approval and encouragement of aviation implied legislative approval of aviation noise, stating both federal and state authorities had attempted vigorously to abate aircraft and airport noise. "[T]he California Legislature has granted airports express and expanded condemnation and compensation authority to reduce and minimize the effects of noise on the private use and enjoyment of neighboring land. [Citations.] Reasonably construed, the foregoing legislation preserves both the authority and responsibility of an airport proprietor to acquire adequate noise easements and to institute reasonable noise abatement procedures which do not conflict with federal law." (*Greater Westchester Homeowners Assn.* v. *City of Los Angeles, supra*, 26 Cal.3d at pp. 101-102.) Such alternative measures are not available to cities to reduce the effects of traffic noise.

Based on the foregoing, we conclude the court did not err to the extent it based its rejection of the nuisance cause of action on section 3482.

## C. *The Separation of Powers Defense:*

Plaintiffs also argue the court erred in concluding the relief they seek involves legislative functions not subject to judicial review. They acknowledge the establishment of street classification criteria is a legislative function, but characterize their complaint as merely challenging the application of those criteria to H Street. This, plaintiffs argue, is an adjudicatory function properly before this court.

The language of plaintiffs' allegations and prayer for relief belies this narrow reading of the nuisance cause of action. The City's complained-of action and inaction must be viewed in the context of allegations describing the ongoing process of addressing traffic problems in East Sacramento. Paragraph 16 of the complaint portrays efforts in the study phase of the H Street (East Sacramento) Neighborhood Preservation Transportation Plan which resulted in the issuance of a draft report in March 1991. Paragraph 18 describes the city council's failure to take action following the issuance of the final report.

More importantly, the prayer for relief, if granted, would effectively compel the City to modify H Street's "through street" designation, and

reduce traffic volume. As the court observed, reduction of traffic volume necessarily involves rerouting traffic from H Street to other streets or highways. We conclude the court properly determined the City's decisions regarding the routing of traffic are a legislative function beyond our power to control.

█ A legislative body's primary function is to declare public policy. (*Carr* v. *Kingsbury* (1931) 111 Cal.App. 165, 168 [295 P. 586].) It determines where the public good requires legislative action "after the full investigation and debate which legislative organization and methods permit." (*People* v. *Pacific Health Corp.* (1938) 12 Cal.2d 156, 161 [82 P.2d 429, 119 A.L.R. 1284].) We have described the manner in which the Legislature delegates to local governments the legislative power to regulate traffic on streets within their jurisdictions. (Veh. Code, § 21100.)

Courts may rule on the constitutionality of legislative actions. (*City of Sacramento* v. *California State Legislature* (1986) 187 Cal.App.3d 393, 397 [231 Cal.Rptr. 686].) However, under the separation of powers doctrine, courts lack power to interfere with legislative action at either the state or local level. (*Board of Supervisors* v. *California Highway Commission, supra,* 57 Cal.App.3d at pp. 961-962.)

Thus, as aptly stated in *Myers* v. *English* (1858) 9 Cal. 341 (disapproved on other grounds in *Mandel* v. *Myers* (1981) 29 Cal.3d 531, 551, fn. 9 [174 Cal.Rptr. 841, 629 P.2d 935]), "It is within the legitimate power of the judiciary, to declare the *action* of the Legislature unconstitutional, where that action exceeds the limits of the supreme law; but the Courts have no means, and no power, to avoid the effects of *non-action*. The Legislature being the creative element in the system, its action cannot be quickened by the other departments." (*Myers* v. *English, supra,* 9 Cal. at p. 349, italics in original; *Hutchinson* v. *City of Sacramento, supra,* 17 Cal.App.4th at p. 796.) █ Here, plaintiffs ask us to remedy the City's alleged inaction in solving East Sacramento's traffic problems through injunctive relief.

Plaintiffs' reliance on *California Oregon Power Co.* v. *Superior Court* (1955) 45 Cal.2d 858 [291 P.2d 455] is misplaced. In that case, the public utility attempted to enjoin the Attorney General's lawsuit against the utility to abate a nuisance arising from its maintenance and use of dams on the Klamath River. Among several arguments in support of its petition, the utility contended the superior court lacked jurisdiction to entertain the

nuisance action because the subject matter was legislative, not judicial. (*Id.* at p. 861.) Specifically, it argued the nuisance action should be restrained because the court would be required to "legislate for the future with respect to the regulation of hydroelectric installations on navigable streams and to declare the state's policy in regard to the adjustment of the competing interests, that is, the preservation of fish and maintenance and operation of such dams." (*Id.* at p. 870.) The Supreme Court rejected the utility's argument and held the Attorney General's action was not barred by the separation of powers doctrine. Based on the circumstances of that case, it found the nuisance action did not require the court to choose between conflicting policies. Instead, the case "merely present[ed] the question of what relief if any may be had for the condition which is dangerous to the lives of persons as shown by prior drownings and the destruction of fish." (*Id.* at p. 871.)

This case is different. The remedy sought by plaintiffs directly interferes with the City's legislative function. We lack power to grant the requested relief.

II

*Plaintiffs Cannot Amend Their Complaint to Claim Other Relief*

Plaintiffs contend the court erred in sustaining the City's demurrer without leave to amend.[5] They say the complaint alleges facts sufficient to state causes of action for inverse condemnation, dangerous condition of public property, and inconsistency with the City's general plan. We reject this contention.

A. *Inverse Condemnation:*

■   An urban landowner enjoys property rights in the nature of easements of access to and from his or her property. "This easement consists of the right to get into the street upon which the landowner's property abuts and

---

[5]At the hearing on the City's demurrer, the trial court invited plaintiffs to show how they might amend their complaint to state facts supporting a different argument or legal theory of relief. Plaintiffs responded they wanted to "stick with the facts as alleged in . . . the nuisance action." Plaintiffs are entitled to raise on appeal the propriety of an order sustaining a demurrer without leave to amend even though they made no request to amend the pleading in the trial court. (Code Civ. Proc., § 472c.)

from there, in a reasonable manner, to the general system of public streets." (*Breidert* v. *Southern Pac. Co.* (1964) 61 Cal.2d 659, 663 [39 Cal.Rptr. 903, 394 P.2d 719].)

However, not every impairment of access constitutes a taking which entitles the landowner to compensation. "Such compensation must rest upon the property owner's showing of a *substantial impairment* of his right of access to the general system of public streets." (61 Cal.2d at p. 664, italics in original.)

Thus, the right of ingress and egress is not absolute. (*People* v. *Ayon* (1960) 54 Cal.2d 217, 223 [5 Cal.Rptr. 151, 352 P.2d 519].) A property owner "cannot demand that the adjacent street be left in its original condition for all time to insure his ability to continue to enter and leave his property in the same manner as that to which he has become accustomed. Modern transportation requirements necessitate continual improvements of streets and relocation of traffic. The property owner has no constitutional right to compensation simply because the streets upon which his property abuts are improved so as to affect the *traffic flow* on such streets. If loss of business or of value of the property results, that is noncompensable. *It is simply a risk the property owner assumes when he lives in modern society under modern traffic conditions." (Id.* at pp. 223-224, italics added.)

█ Plaintiffs in this case allege the access to and from H Street is "substantially impaired," presumably by the "excessive, freeway-level volumes of traffic." We conclude these allegations simply involve ordinary changes in traffic flow and are insufficient to state a cause of action for inverse condemnation.

We also reject plaintiffs' assertion their complaint alleges facts sufficient to state a cause of action for inverse condemnation based on damage arising from excessive noise and fumes generated by the operation of H Street. Plaintiffs fail to allege they suffered unique, special or peculiar damages, that is, "not such as is common to all property in the neighborhood . . . ." (*Harding* v. *State of California* ex rel. *Dept. of Transportation, supra,* 159 Cal.App.3d at p. 366.)

In any event, plaintiffs allege they gave defendants notice of damage in "early 1988." The complaint was filed on January 28, 1992, well beyond the three-year limitations period applicable to actions for inverse condemnation. (Code Civ. Proc., § 338, subd. (j).)

B. *Dangerous Condition of Public Property:*

Under Government Code section 835, a public entity is liable for *injury* if the plaintiff establishes "that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either: [¶] (a) [a] negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or [¶] (b) [t]he public entity had actual or constructive notice of the dangerous condition . . . a sufficient time prior to the injury to have taken measures to protect against the dangerous condition." ■ Plaintiffs assert they should be permitted to amend their complaint to allege personal injury and property damage arising from the dangerous condition of H Street.

Actions against a city pursuant to Government Code section 835 are subject to the claim requirements of the California Tort Claims Act. (Gov. Code, § 905.) Claims for personal injury or property damage must be presented not later than six months after the accrual of the cause of action. (Gov. Code, § 911.2.) "[T]he date of the accrual of a cause of action to which a claim relates is the date upon which the cause of action would be deemed to have accrued within the meaning of the statute of limitations which would be applicable thereto if there were no requirement that a claim be presented to and be acted upon by the public entity before an action could be commenced thereon. . . ." (Gov. Code, § 901.) Plaintiffs' complaint alleges they have given notice to the City of the damages caused by the alleged nuisance since early 1988.

Plaintiffs admit they "cannot quarrel with the fact that they did not first file a claim for monetary damages before bringing their action [to abate a nuisance.]" They acknowledge they made a "conscious decision to forego the time consuming process of seeking monetary damages," given the nature of the safety and health hazards arising from the City's operation of H Street. Accordingly, plaintiffs must also accept the fact their failure to file a timely tort claim bars any amendment to allege a cause of action for money damages arising from a dangerous condition of public property.

C. *Inconsistency With the General Plan:*

■ Plaintiffs argue their complaint properly alleges the operation and designation of H Street is inconsistent with the City's general plan. They

presumably seek injunctive relief to resolve the alleged inconsistency. We conclude plaintiffs cannot state a cause of action to enforce conformity with the general plan in the circumstances of this case.

California's Planning and Zoning Law (Gov. Code, § 65000 et seq.) requires every city and county to adopt "a comprehensive, long-term general plan for [its] physical development . . . ." (Gov. Code, § 65300.) The general plan must set forth a statement of the city's development policies and objectives. (Gov. Code, § 65302.) It encompasses various elements, including: "[a] circulation element consisting of the general location and extent of existing and proposed major thoroughfares, transportation routes, terminals, and other local public utilities and facilities, all correlated with the land use element of the plan;" and "[a] noise element which . . . quantif[ies] . . . the community noise environment. . . ." (Gov. Code, § 65302, subds. (b) and (f).) Among the sources of environmental noise addressed in the noise element are highways and freeways, and primary arterials and major local streets. (Gov. Code, § 65302, subd. (f)(1) and (2).)

The Legislature required that, beginning January 1, 1974, all local zoning ordinances be consistent with the general plan, and accorded property owners standing to enforce compliance through a petition for writ of mandate. (Gov. Code, § 65860.) Similarly, cities are required to conform proposed public works projects to the general plan. (See *Friends of "B" Street* v. *City of Hayward* (1980) 106 Cal.App.3d 988, 998 [165 Cal.Rptr. 514].)

These statutory requirements address future growth, and do not require local governments to bring existing neighborhoods and streets into compliance with the general plan. Our conclusion is supported by the Legislature's declaration of policy regarding the Planning and Zoning Law. "The Legislature . . . finds that decisions involving the *future growth of the state*, most of which are made and will continue to be made at the local level, should be guided by an effective planning process, including the local general plan . . . ." (Gov. Code, § 65030.1, italics added.) "The Legislature did not limit this policy to decisions regarding proposed private developments; *it encompasses all decisions involving the future growth of the state*, which necessarily includes decisions by a city to proceed with public works projects." (*Friends of "B" Street* v. *City of Hayward, supra*, 106 Cal.App.3d at p. 998, italics added.)

We take judicial notice H Street was completed before 1974 and is in current use, and conclude mandatory requirements for general plan compliance are inapplicable. Plaintiffs offer no authority to the contrary.

## DISPOSITION

The judgment is affirmed.

Davis, Acting P. J., and Scotland, J, concurred.

A petition for a rehearing was denied November 18, 1993, and appellants' petition for review by the Supreme Court was denied January 20, 1994.