[No. E025482. Fourth Dist., Div. Two. Apr. 11, 2000.]

CHARLES IVAN JONES et al., Plaintiffs and Appellants, v.
UNION PACIFIC RAILROAD COMPANY, Defendant and Respondent.

### COUNSEL

Charles Ivan Jones and Shirley L. Jones, in pro. per., for Plaintiffs and Appellants.

Michael L. Whitcomb and Glenn C. Moret for Defendant and Respondent.

### OPINION

**GAUT, J.—**

#### 1. *Introduction*

Plaintiffs Charles Ivan Jones and Shirley L. Jones appeal summary judgment entered in favor of defendant Union Pacific Railroad Company. Plaintiffs, whose home is adjacent to Union Pacific's railroad tracks in Yermo, filed a nuisance action against Union Pacific for allegedly causing needless train noise and engine fumes. Union Pacific moved for summary judgment or, alternatively, summary adjudication of plaintiffs' action. The trial court granted Union Pacific's motion for summary judgment on the grounds plaintiffs' action is federally preempted by the Surface Transportation Board (STB), Interstate Commerce Commission Termination Act (ICCTA), federal Noise Control Act (NCA), and Federal Railroad Safety Act (FRSA), and is barred by Civil Code section 3482 and the federal Constitution's commerce clause.

Plaintiffs argue on appeal that their action is neither preempted nor barred by the various federal regulations, commerce clause or Civil Code section 3482 because Union Pacific's conduct is not federally regulated activity. Plaintiffs also argue that state court adjudication of their claim is not barred by the commerce clause because it would not affect interstate commerce since plaintiffs are only seeking monetary compensation for Union Pacific's conduct.[1]

We conclude that triable issues of material fact exist as to whether plaintiffs' action is federally preempted. Triable issues also exist as to

[1]Plaintiffs filed a second lawsuit (*Jones v. Union Pacific Railroad Co.* (Super. Ct. San Bernardino County, 1999, No. BCV04545) on August 5, 1999, after plaintiffs filed notice of

whether plaintiffs' action is barred by Civil Code section 3482 and the commerce clause. If Union Pacific's alleged conduct was not in furtherance of necessary railroad operations or committed for safety reasons, state court is a proper forum for plaintiffs' action.

Summary adjudication of plaintiffs' cause of action for nuisance per se, however, is proper since it is not based on a statutory provision that declares the conduct in question a per se nuisance. Accordingly, we reverse the summary judgment with directions to enter summary adjudication in favor of Union Pacific solely as to plaintiffs' nuisance per se cause of action, and deny summary judgment and summary adjudication as to the remainder of plaintiffs' complaint.[2]

## 2. *Facts and Procedural Background*

Plaintiffs own a home adjacent to Union Pacific railroad tracks, near Union Pacific's Yermo railroad terminal facility.[3] The Yermo facility consists of a train yard area and railroad tracks. In September 1996, the STB approved the merger between Union Pacific and Southern Pacific Transportation Company. The merger resulted in train congestion problems.

In June 1997, Union Pacific began parking idling train engines in front of plaintiffs' home. Plaintiffs began experiencing frequent loud train noise throughout the day and night, which included horn blowing in front of their home, and noisy idling train engines parked in front of their home for hours, and even days at a time.

Plaintiffs and Elmer Bricker, who were the only residents in the area in question, began complaining about the train noise and engine fumes to

this appeal. Plaintiffs' second lawsuit has not been consolidated with this action and, hence, is not considered in this appeal. On January 19, 2000, plaintiffs filed notice of appeal of judgment entered in their second lawsuit (No. E026430). Plaintiffs' second complaint asserts identical theories of recovery, with the exception that plaintiffs allege additional incidents of train noise harassment occurring between August 6, 1998, and July 21, 1999. The second complaint also differs from the complaint which is the subject of this appeal in that, in addition to seeking monetary relief, it requests injunctive relief.

[2]The plaintiffs' unopposed request for judicial notice, filed on October 12, 1999, is granted as to items 1 (STB Finance Dock. No. 33611) and 3 (U.S. Dist. Ct., C.D.Cal., minute order dated Nov. 9, 1998, in *Union Pacific Railroad Co. v. South Coast Air Quality Management Dist.*, case No. CV-98-6892), and denied as to items 2 (article in *Who's Who and What Does It Do?*, regarding the STB), 4 (Findings of the Cal. Scientific Review Panel on The Report on Diesel Exhaust), and 5 (Cal. Air Resources Bd., Res. No. 98-35, dated Aug. 27, 1998). Plaintiffs' unopposed request for judicial notice of (1) STB Finance Docket No. 33466, (2) STB Finance Docket No. 33420, and (3) plaintiffs' second complaint filed against Union Pacific on August 5, 1999 (*Jones v. Union Pacific Railroad Co., supra,* No. BCV04545), is granted. Union Pacific's unopposed request for judicial notice of STB Finance Docket No. 32760 and STB service order No. 1518, filed on December 2, 1999, is granted.

[3]Mr. Jones purchased the home in July 1991.

Union Pacific and various governmental agencies. Eventually, Union Pacific agreed to issue a general order prohibiting parking unattended train engines in front of plaintiffs' and Bricker's homes for more than one hour. Union Pacific issued the order on February 10, 1998. Union Pacific employees ignored the order for the most part, and the train noise and idling train engines parked in front of plaintiffs' home continued.

On June 12, 1998, plaintiffs filed a verified complaint against Union Pacific for monetary damages. Plaintiffs later filed an amended verified complaint (complaint) containing the following causes of action: nuisance, nuisance per se, negligence, and intentional and negligent infliction of emotional distress. Plaintiffs alleged that Union Pacific employees parked idling trains in front of their home for lengthy periods of time and blew train horns in front of their house for no reason other than to harass them. Plaintiffs further alleged that they suffered depression, anger, frustration, and other emotional and physical ailments as a result of the loud train noise and the engine fumes.

Union Pacific filed a motion for summary judgment or summary adjudication, which plaintiffs opposed. In support of plaintiffs' opposition, they provided their own declarations and Bricker's declaration, stating that the train noise in question appeared to serve no legitimate purpose, and worsened after plaintiffs and Bricker began complaining. Plaintiffs' declarations further stated that Union Pacific employees were verbally abusive.

The trial court granted Union Pacific's summary judgment motion on the following grounds: "this Court lacks subject matter jurisdiction; jurisdiction for this matter is vested in the Surface Transportation Board; plaintiffs' claims are preempted by federal law; there is a conclusive defense to the action and plaintiffs cannot establish essential elements of the causes of action, the Interstate Commerce Commission Termination Act, Noise Control Act, and Federal Railroad Safety Act preempt and bar plaintiffs' claims; plaintiffs' claims are barred by Civil Code Section 3482 and the federal Constitution . . . ."

3. *Preemption Under Interstate Commerce Commission Termination Act*

█ Plaintiffs contend the trial court erred in finding that the STB had exclusive jurisdiction under the ICCTA.

Under 49 United States Code section 10501(b), part of the ICCTA, the STB has jurisdiction over railroads as to "(1) . . . rates, classifications, rules (including car service, interchange, and other operating rules), practices,

routes, services, and facilities of such carriers; and [¶] (2) the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State, [¶] is exclusive. Except as otherwise provided in this part, the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law."[4]

Congress is authorized under the commerce clause to regulate the railroads. (*City of Auburn v. U.S. Government, supra,* 154 F.3d at p. 1029.) The Supreme Court repeatedly has recognized the preclusive effect of federal legislation in this area. (*Ibid.*) The federal courts have also found broad preemption under the ICCTA. (*Id.* at p. 1030.) "Preemption of state law is compelled if Congress' command is explicitly stated in the federal statute's language or implicitly contained in its structure or purpose." (*Id.* at p. 1031; *Shaw v. Delta Air Lines, Inc.* (1983) 463 U.S. 85, 95 [103 S.Ct. 2890, 2899, 77 L.Ed.2d 490].)

But according to the federal House Transportation and Infrastructure Committee, "in passing the ICCTA, Congress meant to 'occupy[] the entire field of economic regulation of the interstate rail transportation system,' but retain for the states 'the police powers reserved by the Constitution.' H.R.Rep. No. 104-311, 104th Cong., 1st Sess., at 95-96 (1995), reprinted in 1995 U.S.C.C.A.N. 793, 807-08." (*City of Auburn v. U.S. Government, supra,* 154 F.3d at p. 1029, italics omitted.)

Plaintiffs argue that their state claims are not economic regulations, but rather involve " 'essential local police power required to protect the health and safety of citizens. . . .' " (*City of Auburn v. U.S. Government, supra,* 154 F.3d at p. 1029.) Union Pacific asserts that the increased noise, fumes, engine idling, and other irritating activity, were due to increased train congestion resulting from the merger of Union Pacific and Southern Pacific. According to Union Pacific, in order to reduce the congestion arising from the merger, the STB authorized Union Pacific to take a wide variety of severe measures, which encompassed the conduct in question. Union Pacific argues that the regulatory actions taken in furtherance of reducing congestion caused by the merger conflict with plaintiffs' state action. Hence, plaintiffs' action is preempted by federal regulation of railroads under 49 United States Code section 10501 of the ICCTA.

---

[4]"The ICCTA abolished the Interstate Commerce Commission, created the STB, and granted the board jurisdiction over certain interstate rail functions and proceedings. See the ICC Termination Act, Pub.L. No. 104-88, 109 Stat. 803 (1995)." (*City of Auburn v. U.S. Government* (9th Cir. 1998) 154 F.3d 1025, 1028, fn. 3, cert. den. June 21, 1999, 527 U.S. 1022 [119 S.Ct. 2367, 144 L.Ed.2d 771].)

Union Pacific relies on *City of Auburn v. U.S. Government, supra,* 154 F.3d at page 1028, which concerned the reopening of a railroad line. The *Auburn* federal district court upheld the STB's finding that compliance with state and local environmental regulations was not required because the regulations were preempted by 49 United States Code section 10501, part of the ICCTA. (*City of Auburn, supra,* at p. 1031.) But *Auburn* is distinguishable. In *Auburn,* application of state environmental regulations potentially could have interfered with, or even prevented, the reopening of a railroad line. Here, Union Pacific's conduct, according to plaintiffs, served no purpose and was committed solely to harass plaintiffs because they complained about unnecessary train noise and fumes.

State and local regulation of Union Pacific's trains is permissible if it does not interfere with Union Pacific's interstate rail operations. If the tooting of train horns and idling of train engines for long periods of time in front of plaintiffs' house were necessary to reduce congestion and operate Union Pacific's railroad business safely and efficiently, then plaintiffs' claim is federally preempted. But if Union Pacific's activity in question did not further rail operations or was committed solely to harass plaintiffs, then plaintiffs' action is not federally preempted.

We thus must determine whether plaintiffs provided evidence that the horn blowing and idling of train engines in front of plaintiffs' home were not safety related or in furtherance of Union Pacific's operations. Evidence as to whether the conduct in question furthered Union Pacific's economic interests is relevant to that determination.

Plaintiffs have provided evidence, including their declarations and the declaration of their neighbor, Elmer Bricker, stating that between June 12, 1997, and June 11, 1998, Union Pacific parked idling trains in front of their homes "for days and even weeks at a time." This caused continuous noise and fumes. Charles Jones states in his declaration: "After I started complaining regularly, various train engineers started blowing their horns directly in front of my property for no apparent reason other than harassment. They did this often in the middle of the night . . . . I know there was no safety reason to blow the horn . . . . This horn blowing continues even well into 1999."

When discussing the matter with Union Pacific employees, Charles Jones was told that if Union Pacific engines were going to be parked for longer than two hours, the engines were to be shut off because it would save the company millions of dollars per year in fuel conservation costs. This general policy was also reflected in correspondence to Bricker from the California Environmental Protection Agency.

Bricker notes in his declaration that after he and the plaintiffs complained to Union Pacific and the air quality district in 1998, Union Pacific issued an order that Union Pacific park their running engines a quarter mile away from Bricker's and plaintiffs' homes. But, for the most part, Union Pacific employees ignored the order.[5] Union Pacific's senior terminal manager, Jeffrey Miller, provided deposition testimony confirming the issuance of the order and noncompliance.

This evidence cited in plaintiffs' summary judgment opposition is sufficient to raise a triable issue of fact as to whether Union Pacific's activities were committed solely to harass plaintiffs, and were not safety related or in furtherance of Union Pacific's railroad operations. There, thus, is a triable issue as to whether plaintiffs' state tort claims fall within the purview of state police powers or are federally preempted under the ICCTA by 49 United States Code section 10501.

### 4. *Preemption Under the Noise Control Act*

■ Plaintiffs contend the trial court erred in finding that their claims were preempted by the federal Noise Control Act of 1972, 42 United States Code section 4901 et seq. The NCA provides maximum noise levels for rail cars engaged in interstate commerce. (42 U.S.C. § 4916 et seq.) Federal rail car noise regulations enforced under the NCA are found at 40 Code of Federal Regulations section 201 et seq. (1999).

Union Pacific relies on the federal district court decision, *Rushing v. Kansas City Southern Ry. Co.* (S.D.Miss. 1998) 14 F.Supp.2d 869, for the proposition that the NCA preempts plaintiffs' nuisance claims. But on appeal, the United States Court of Appeals reversed the district court's decision relied upon by Union Pacific. (*Rushing v. Kansas City Southern Ry. Co.* (5th Cir. 1999) 185 F.3d 496, petn. for cert. filed Dec. 28, 1999.)

In *Rushing v. Kansas City Southern Ry. Co., supra,* 185 F.3d 496, homeowners brought a private nuisance claim against a railroad company based on noise and vibrations from a railroad switching yard. The federal district court granted the railroad's partial summary judgment motion on preemption grounds. On appeal, the *Rushing* court reversed, holding that triable issues of fact existed as to whether noise levels complied with the NCA limits, and thus precluded summary judgment on preemption grounds. (*Rushing v. Kansas City Southern Ry. Co., supra,* 185 F.3d 496.)

In discussing NCA preemption, the *Rushing* court explained federal preemption as follows: " 'Where a state [law] conflicts with, or frustrates,

---

[5]The Union Pacific order, dated February 10, 1998, states: "Yermo: Do not leave locomotives unattended between MP 165 and 165.25 for more than one hour."

federal law, the former must give way.' *CSX Transp., Inc. v. Easterwood,* 507 U.S. 658, 663, 113 S.Ct. 1732, 1737, 123 L.Ed.2d 387 (1993) (citing U.S. CONST., art. VI, cl. 2). Nonetheless, 'a court interpreting a federal statute pertaining to a subject traditionally governed by state law will be reluctant to find pre-emption.' *Id.* at 664. The NCA recognizes that it regulates an area of traditional state concern: 'primary responsibility for control of noise rests with State and local governments. . . .' 42 U.S.C. § 4901(a)(3). And state common law traditionally governs nuisances. We will find preemption, therefore, only if it is the clear and manifest intent of Congress. [Citations.]" (*Rushing v. Kansas City Southern Ry. Co., supra,* 185 F.3d at p. 510.)

The NCA's preemption provision provides, "[A]fter the effective date of a regulation under this section applicable to noise emissions . . . , no State . . . may adopt or enforce any standard applicable to noise emissions resulting from the operation of the same equipment or facility of such carrier unless such standard is identical to a standard . . . prescribed by any regulation under this section." (42 U.S.C. § 4916(c)(1).)

The *Rushing* court noted that this section "is decidedly narrow. The NCA 'was not designed to remove all state and local control over noise.' [Citation.] And the clause 'in no way suggests that Congress meant for the adoption of any federal noise regulation to bar or displace every state effort to regulate the noise emissions of interstate rail carriers.' [Citation.] Rather, by its terms, the NCA preempts only those state laws that disparately regulate the same operations that federal regulations govern." (*Rushing v. Kansas City Southern Ry. Co., supra,* 185 F.3d at pp. 510-511, fns. omitted.)

The *Rushing* court concluded based on these preemption principles that "A state may employ or allow a common law action for damages, then, only to enforce federal regulations or to regulate aspects of railroads and switching over which the state has discretionary authority. This outlines the parameters of [Kansas City Southern Railway Company's] affirmative preemption defense. If KCS establishes that it complies with the NCA's noise regulations, then the NCA preempts the nuisance suit insofar as that suit complains of excessive noise. If KCS fails to establish its regulatory compliance, then the suit may proceed to enforce compliance by the award of damages for excessive, nuisance-causing noise. Similarly, if KCS fails to establish that the NCA regulates the operation of the equipment at issue, then no preemption of state law exists." (*Rushing v. Kansas City Southern Ry. Co., supra,* 185 F.3d at p. 511, fn. omitted.)

The *Rushing* court concluded a triable issue of fact existed based on the plaintiffs' lay opinion that the railroad's expert's opinion regarding compliance was based on sound measurements which did not reflect the true sound level the plaintiffs typically heard.

Here, Union Pacific has failed to address the issue of whether the noise, which is the subject of plaintiffs' lawsuit, violated federal noise regulations. If the train noise violated either federal noise regulations or state-equivalent regulations, plaintiffs' claim is not subject to federal preemption. Under the NCA, the state is not precluded from enforcing noise violations so long as enforcement is based on federal standards or identical state standards or the activity is not subject to NCA regulation. (42 U.S.C. § 4916.) We thus conclude the trial court erred in finding as a matter of law that plaintiffs' action was barred by the NCA. Union Pacific failed to meet its burden of proof that it had complied with federal noise regulations or that the subject activity was subject to NCA regulation.

In addition, under 49 Code of Federal Regulations section 210.3 (b)(3) (1999), the federal noise regulations relied upon by Union Pacific (40 C.F.R. §§ 210.11-210.15) do not apply to train horn and whistle noise. Title 49 Code of Federal Regulations section 210.3 provides: "(a) Except as provided in paragraph (b) of this section, the provisions of this part apply to the total sound emitted by moving rail cars and locomotives . . . , active retarders, switcher locomotives, car coupling operations, and load cell test stands, operated by a railroad as defined in 45 U.S.C. 22, under the conditions described in this part and in 40 CFR Part 201. [¶] (b) The provisions of this part do not apply to—[¶] . . . (3) Sound emitted by warning devices, such as horns, whistles, or bells when operated for the purpose of safety; . . ." As regards train horn noise, under 49 Code of Federal Regulations section 210.3(b)(3), the trial court erred in finding federal preemption under the NCA since NCA regulations do not apply to warning devices such as train horns and whistles. (*Southern Pacific v. Or. PUC* (9th Cir. 1993) 9 F.3d 807, 811-812; *Rushing v. Kansas City Southern Ry. Co., supra*, 185 F.3d at p. 515.)

### 5. *Preemption Under the Federal Railroad Safety Act*

Plaintiffs contend the trial court erred in finding plaintiffs' action barred under the FRSA. Plaintiffs argue that their action is based on activity that is not encompassed by the FRSA. Plaintiffs' complaint is based on train noise caused by idling engines, unnecessary horn blowing, and Union Pacific employee harassment, which included verbal abuse. Union Pacific argues that plaintiffs' action is barred because the FRSA preempts all state claims and laws on the subject of railroad safety and operations.

The FRSA of 1970, codified at 45 United States Code section 421 et seq., was repealed in 1994, and recodified at 49 United States Code section 20101 et seq. The newly codified 1994 act is referred to as the Federal Railroad

Safety Authorization Act (FRSAA). For purposes of this case, the provisions of the FRSAA relevant to this case are essentially the same as those contained in the repealed 1970 act.

The purpose of the FRSAA "is to promote safety in every area of railroad operations and reduce railroad-related accidents and incidents." (49 U.S.C. § 20101; *Rushing v. Kansas City Southern Ry. Co., supra,* 185 F.3d at p. 515.) The act grants the Secretary of Transportation broad power to promulgate regulations "for every area of railroad safety." (49 U.S.C. § 20103; *Rushing v. Kansas City Southern Ry. Co., supra,* 185 F.3d at p. 515.)

The federal preemptive scope is defined in the FRSAA as follows: "Laws, regulations, and orders related to railroad safety shall be nationally uniform to the extent practicable. A State may adopt or continue in force a law, regulation, or order related to railroad safety until the Secretary of Transportation prescribes a regulation or issues an order covering the subject matter of the State requirement. A State may adopt or continue in force an additional or more stringent law, regulation, or order related to railroad safety when the law, regulation, or order—[¶] (1) is necessary to eliminate or reduce an essentially local safety hazard; [¶] (2) is not incompatible with a law, regulation, or order of the United States Government; and [¶] (3) does not unreasonably burden interstate commerce."[6] (49 U.S.C. § 20106.) The act further states that the Secretary of Transportation generally has exclusive authority to impose civil penalties and injunctions for violations of its own regulations. (49 U.S.C. § 20111.)

FRSA and FRSAA preemption is even more disfavored than preemption generally. (*Southern Pacific v. OR. PUC, supra,* 9 F.3d at p. 813; *Rushing v. Kansas City Southern Ry. Co., supra,* 185 F.3d at p. 515.) "The restrictive terms of its preemption provision 'indicate[] that pre-emption will lie only if the federal regulations substantially subsume the subject matter of the relevant state law.' [Citation.] When applying FRSA preemption, the Court has eschewed broad categories such as 'railroad safety' and has looked at the narrow categories of 'warning devices' installed at federally-improved grade crossings and 'train speed.' [Citations.]" (*Rushing, supra,* at p. 515.)

---

[6]The 1979 FRSA defined the preemptive scope similarly as follows: "States may 'adopt or continue in force any law, rule, regulation, or standard relating to railroad safety until such time as the Secretary has adopted a rule, regulation or order, or standard covering the same subject matter of such State requirement.' Even after federal standards have been promulgated, the States may adopt more stringent safety requirements 'when necessary to eliminate or reduce an essentially local safety hazard,' if those standards are not 'incompatible with' federal laws or regulations and not an undue burden on interstate commerce." (*Rushing v. Kansas City Southern Ry. Co., supra,* 185 F.3d at p. 515, quoting *CSX Transp., Inc. v. Easterwood, supra,* 507 U.S. 658, 662 [113 S.Ct. 1732, 1736] and 45 U.S.C. former § 434, repealed and replaced by 49 U.S.C. § 20106.)

Under the FRSA, the federal Department of Transportation issued a train safety regulation, 49 Code of Federal Regulations section 229.129 (1999), which requires, for safety purposes, that trains be equipped with audible warning devices, such as horns or whistles, and that such devices have a specified minimum decibel level.[7] (*Rushing v. Kansas City Southern Ry. Co., supra,* 185 F.3d at p. 515.) The provision does not cover the topic of when or how often such devices shall be sounded.

In *Rushing,* the plaintiffs argued that the trial court erred in granting summary judgment and dismissing their train-whistle-blowing nuisance claim based on federal preemption under the FRSA. The plaintiffs asserted that a genuine issue of material fact existed as to whether the defendant railway company sounded its train whistles only for necessary safety reasons. The federal court of appeals agreed, and reversed the trial court based on the following rationale: Based on 49 Code of Federal Regulations section 229.129 (1999) "and the fact that KCS allegedly sounds its whistles only as required for safety reasons (at grade crossings and before backing up), KCS contends that the nuisance claim is preempted. Given the narrow scope of FRSA preemption, however, the cited regulations do not preempt the claim. In fact, the nuisance claim does not constitute a state railroad safety regulation at all. [¶] Specifically, the Rushings complain about when the trains sound their whistles (at night, for no apparent reason); the regulations address only the sound-producing capacity of the whistles. A sound capacity safety regulation does not substantially subsume regulations on when whistles are sounded. [Citation.] Although the state likely could not regulate the sounding of whistles by banning them altogether, because it would defeat the purpose of the whistle capacity provision, it can impose restrictions on when they are sounded. [Citation.] The FRSA does not preempt the nuisance claim as a matter of law." (*Rushing v. Kansas City Southern Ry. Co., supra,* 185 F.3d at pp. 515-516, fn. omitted.)

*Rushing* is directly on point. Based on its rationale for concluding federal preemption inapplicable under the FRSA, we conclude here that the trial court erred in finding federal preemption as a matter of law since there is

---

[7]Title 49 Code of Federal Regulations section 229.129 states: "(a) After August 31, 1980, each lead locomotive shall be provided with an audible warning device that produces a minimum sound level of 96db(A) at 100 feet forward of the locomotive in its direction of travel. The device shall be arranged so that it can be conveniently operated from the engineer's normal position in the cab. [¶] (b) Measurement of the sound level shall be made using a sound level meter conforming, at a minimum, to the requirements of ANSI S1.4-1971, Type 2, and set to an A-weighted slow response. While the locomotive is on level tangent track, the microphone shall be positioned 4 feet above the ground at the center line of the track, and shall be oriented with respect to the sound source in accordance with the manufacturer's recommendations. [¶] (c) A 4dB(A) measurement tolerance is allowable for a given measurement."

evidence that Union Pacific's horn blowing did not serve any safety purpose and was done solely to harass plaintiffs and their neighbor.

As to plaintiffs' complaints of idling engine noise, pollution, and Union Pacific employee harassment, these are clearly not subject to FRSAA regulation since they do not serve any safety purpose.

### 6. *The Commerce Clause*

In addition to finding that plaintiffs' action was federally preempted, the trial court also found that plaintiffs' action was barred by the federal Constitution's commerce clause. Union Pacific argues that plaintiffs' lawsuit violates article I, section 8 of the United States Constitution because it creates an undue burden on interstate commerce in violation of the commerce clause (U.S. Const., art. I, § 8, cl. 3).

█ Plaintiffs argue their claims do not violate the commerce clause because they do not place an undue burden on interstate commerce and do not raise a conflict between state and federal regulations. Furthermore, plaintiffs note that they are not seeking injunctive relief. They are merely seeking monetary damages for their injuries.

"Congress' authority under the Commerce Clause to regulate the railroads is well established." (*City of Auburn v. U.S. Government, supra,* 154 F.3d at p. 1029.) But railroad activity of a local concern, which is not regulated by federal legislation, and does not seriously interfere with interstate commerce, may be regulated by the states under the police powers reserved by the federal Constitution. (*Southern Pacific Co. v. Arizona* (1945) 325 U.S. 761, 766-767,770 [65 S.Ct. 1515, 1518-1519, 1521, 89 L.Ed. 1915]; H.R.Rep. No. 104-311, 1st Sess., pp. 95-96 (1995), reprinted in 1995 U.S. Code Cong. & Admin. News, pp. 793, 807-808; *City of Auburn, supra,* 154 F.3d at p. 1029.)

Here, state court adjudication of plaintiffs' claims and judgment entered against Union Pacific, in the event plaintiffs prevail, will not result in an undue burden on interstate commerce. Plaintiffs' action seeks monetary compensation for Union Pacific activities which allegedly served no purpose other than to harass plaintiffs. Union Pacific, no doubt, is concerned that allowing plaintiffs to sue Union Pacific in state court for nuisance and emotional distress claims will set a harmful precedent, which could potentially subject Union Pacific to many other law suits of a similar nature.

But if, in fact, Union Pacific's employees have been *needlessly* blowing train horns and whistles and idling train engines in front of property owners'

homes for hours on end, at all hours of the day and night, for no legitimate purpose, then such reprehensible conduct is not protected by the commerce clause. Deterring such conduct by requiring Union Pacific to compensate property owners for consequential harm would not unduly burden interstate commerce since such activity serves no legitimate purpose. Accordingly, we conclude compensation for such conduct may be sought and recovered in state court.

### 7. *Civil Code Section 3482*

■ Plaintiffs assert that the trial court erred in granting summary judgment on the ground their action is barred by Civil Code section 3482. Union Pacific argues that, since federal regulations authorize Union Pacific's conduct in question, plaintiffs are precluded from prevailing on their nuisance claim under Civil Code section 3482.

Civil Code section 3482 provides: "Nothing which is done or maintained under the express authority of a statute can be deemed a nuisance." Section 3482 bars an action for nuisance "where the alleged wrongful acts are expressly authorized by statute. The Supreme Court has 'consistently applied a narrow construction to section 3482 and to the principle therein embodied.' [Citation.] [¶] ' "A statutory sanction cannot be pleaded in justification of acts which by the general rules of law constitute a nuisance, unless the acts complained of are authorized by the *express terms* of the statute under which the justification is made, *or by the plainest and most necessary implication* from the powers expressly conferred, *so that it can be fairly stated that the legislature contemplated the doing of the very act which occasions the injury.*" ' [Citations.]" (*Friends of H Street v. City of Sacramento* (1993) 20 Cal.App.4th 152, 160 [24 Cal.Rptr.2d 607].) Even though acts authorized by statute cannot give rise to nuisance liability, "the *manner* in which those acts are performed may constitute a nuisance." (*Ibid.*)

As discussed in the foregoing sections of this opinion, the activity in question, and manner in which it was committed, are not authorized by, or subject to, federal regulation. At least a triable issue of fact exists in this regard.

The cases relied upon by Union Pacific[8] are distinguishable in that they involve nuisance complaints arising directly from public works construction

---

[8]*Friends of H Street v. City of Sacramento, supra,* 20 Cal.App.4th 152; *Harding v. State of California ex rel. Dept. of Transportation* (1984) 159 Cal.App.3d 359 [205 Cal.Rptr. 561]; *Lombardy v. Peter Kiewit Sons' Co.* (1968) 266 Cal.App.2d 599 [72 Cal.Rptr. 240]; and *Hassell v. San Francisco* (1938) 11 Cal.2d 168 [78 P.2d 1021].)

authorized pursuant to statute, whereas the instant case involves allegedly unnecessary activity, serving no legitimate purpose, and/or activity allegedly committed for the sole purpose of harassing plaintiffs. Here, the trial court erred in granting summary judgment based on Civil Code section 3482 because the activity in question is not expressly authorized by statute.

### 8. *Nuisance Per Se*

Union Pacific argues that plaintiffs cannot prevail on their nuisance per se cause of action because it is not based on a specific statute that declares that Union Pacific's activity constitutes a nuisance. Plaintiffs allege in their nuisance per se cause of action that Union Pacific violated the NCA (42 U.S.C. §§ 4901-4918) and California Health and Safety Code section 41700.[9]

 "The concept of a nuisance per se arises when a legislative body with appropriate jurisdiction, in the exercise of the police power, expressly declares a particular object or substance, activity, or circumstance, to be a nuisance. Generally a nuisance is defined as '[a]nything which is injurious to health, or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, or unlawfully obstructs the free passage or use, in the customary manner, of any navigable lake, or river, bay, stream, canal, or basin, or any public park, square, street, or highway, . . .' (Civ. Code, § 3479.) This requires consideration and balancing of a variety of factors. [Citations.] However, where the law expressly declares something to be a nuisance, then no inquiry beyond its existence need be made and in this sense its mere existence is said to be a nuisance per se. [Citation.] But, to rephrase the rule, to be considered a nuisance per se the object, substance, activity or circumstance at issue must be expressly declared to be a nuisance by its very existence by some applicable law." (*Beck Development Co. v. Southern Pacific Transportation Co.* (1996) 44 Cal.App.4th 1160, 1206-1207 [52 Cal.Rptr.2d 518].)

To support a claim of nuisance per se, plaintiffs must point to a statutory provision that declares Union Pacific's alleged conduct a nuisance. (*Beck Development Co. v. Southern Pacific Transportation Co., supra,* 44 Cal.App.4th at p. 1207.) The provisions cited in plaintiffs' nuisance per se

---

[9]California Health and Safety Code section 41700 provides: "Except as otherwise provided in Section 41705, no person shall discharge from any source whatsoever such quantities of air contaminants or other material which cause injury, detriment, nuisance, or annoyance to any considerable number of persons or to the public, or which endanger the comfort, repose, health, or safety of any such persons or the public, or which cause, or have a natural tendency to cause, injury or damage to business or property."

cause of action do not satisfy this critical requirement. Summary adjudication as to plaintiffs' nuisance cause of action is proper.

### 9. *Disposition*

Summary judgment is reversed. The trial court is directed to grant Union Pacific's alternative motion for summary adjudication as to plaintiffs' nuisance per se cause of action, and to deny Union Pacific's motion for summary judgment and alternative motion for summary adjudication in all other respects. Plaintiffs are entitled to costs on appeal.

Richli, Acting P. J., and Ward, J., concurred.

A petition for a rehearing was denied May 1, 2000.