Filed 1/30/23  In re C.B. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### THIRD APPELLATE DISTRICT

(Calaveras)

----

| | |
|---|---|
| In re C.B. et al., Persons Coming Under the Juvenile Court Law. | C095535 |
| CALAVERAS COUNTY HEALTH AND HUMAN SERVICES AGENCY, Plaintiff and Respondent, v. M.B. et al., Defendants and Appellants. | (Super. Ct. Nos. 19JD6153, 19JD6154) |

In the appeal immediately prior to this one, we reversed the juvenile court's order terminating appellants C.B.'s (mother) and M.B.'s (father) parental rights over the minors (Ca.B. and F.B.), and remanded the case for the juvenile court to reconsider the beneficial parental relationship exception to adoption in light of *In re Caden C.* (2021) 11 Cal.5th 614 (*Caden C.*).  Upon remand, mother and father (parents) filed petitions under Welfare

1

and Institutions Code section 388[1] requesting reinstatement of visitation, family maintenance or reunification services, and/or return of the minors. Parents contend the juvenile court erred in denying these petitions. Parents further argue the trial court violated our remand order, their due process rights, the separation of powers doctrine, and undermined their attempt to prove the beneficial parental relationship exception by not reinstating visitation. We shall affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

We take most of the facts from our prior opinion in *In re C.B.* (Sept. 29, 2021, C092938 [nonpub. opn.]).

In February 2019, Calaveras County Health and Human Services Agency (the Agency) filed a section 300 petition on behalf of minors Ca.B. (then age 22 months) and F.B. (then age seven months) based on domestic violence involving parents, mother's mental health issues, father's substance abuse, and the unsanitary conditions of the home.[2] The juvenile court took jurisdiction, declared the minors dependent children of the court, removed them from parental custody, and provided reunification services. Parents were provided twice-weekly visitation with the minors.

The minors were returned to parental custody with family maintenance services in August 2019, but removed again after a protective custody warrant was issued in October 2019. The minors were placed in the same foster-adoptive home in which they had been previously placed. Parents were again provided twice-weekly visitation with the minors. Parents failed to reunify, and services were terminated in May 2020. Visitation was

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

[2] The section 300 petition was also filed on behalf of the minors' older half sibling, S. (then age three years) who was removed from the home and ultimately placed with her father. This appeal does not encompass orders relating to the minors' half sibling.

reduced to one hour per week for one month and then decreased to every other week in accordance with the best interests of the minors.

In June 2020, mother filed a section 388 petition for modification seeking to change the order terminating reunification services and setting a section 366.26 hearing. She alleged parents had stabilized their lives; father was employed; they had attended substance abuse counseling and online counseling services; and they regularly visited their children. The juvenile court denied the petition without prejudice noting the court saw changing circumstances, but not changed circumstances.

The contested section 366.26 hearing took place on October 7, 2020. Evidence was presented that parents regularly attended visits, the minors were always happy to see them, parents were appropriate, and parents responded to the minors' emotions and needs during visits. The evidence also showed the minors were bonded to parents and their half sibling, and sometimes had difficulty ending visits. The minors' primary parental bond, however, was to their foster-adoptive mother.

The juvenile court found the minors were likely to be adopted and that neither the beneficial parental relationship exception nor the sibling relationship exception to adoption applied. The juvenile court terminated parental rights and visitation. The minors have not seen parents since October 2020.

Parents appealed. On appeal, we reversed the juvenile court's October 7, 2020 orders terminating parents' parental rights. We remanded the matter for a new section 366.26 hearing in light of the recent Supreme Court decision in *Caden C., supra*, 11 Cal.5th 614, which clarified the process and standards for determining whether parents have established the beneficial parental relationship exception to adoption. We instructed the juvenile court to take "into consideration the family's current circumstances and any developments in the dependency proceeding that may have occurred during the pendency of the appeal." The juvenile court received a copy of our opinion prior to the issuance of the remittitur.

3

The same day the opinion was filed, the Agency filed an application for a hearing under section 366.26 for December 14, 2021.

Following remand, mother and father each filed section 388 petitions to change the October 7, 2020 orders. Mother also filed a request for a bonding study. Mother's petition did not have the second page (which could have potentially described why changing the orders was in the best interests of the minors) and nowhere else in the document did she allege how the request to change the orders was in the best interest of the minors. In the attachment to her petition, mother identified the following facts that changed since the October 2020 order: "1. The Appellate Court reversed the Superior Court . . . and remanded the case back to the Superior Court for a new 366.26 hearing." She also alleged pending domestic violence charges had been dropped and no further domestic violence had occurred in the last year; parents had obtained adequate housing and income for the minors; and mother had success as it relates to custody of the minors' half sibling, S. Under the heading "Additional Issues" mother added, "Establish frequent visitation between the minor's [*sic*] and parents in compliance with . . . section 362.1[, subd. ](a)(1)(A)."

Father's petition left blank the answer to "[w]hy would the requested order or action be better for the child." He repeated most of mother's points as to what had changed, and added under the "Additional Issues," category, "Restore the parental rights to both parents, then either return the children on family maintenance, offer reunification services, or terminate dependency."

The juvenile court set the section 388 petitions for hearing to determine whether to grant or deny an evidentiary hearing, concurrently with the Agency's requested section 366.26 hearing.

The court appointed special advocates (CASA) representative filed a report stating she did "not support reinstating visitation at this time as it does not serve the best interest of the children." CASA was concerned reinstating visitation could "disrupt the progress

4

the children had made in healing from past traumas." The CASA report noted the children had lived with the foster mother most of their lives; had not seen parents in over a year; and have never mentioned parents to the CASA representative. CASA further asserted the consensus of the child family team, including input from the therapists, that it was not in the best interest of the minors to reinstate visitation with parents. The CASA report noted the minors were continuously engaged with their foster mother and foster family, who had provided them with a stable routine and home for over a year.

The Agency also filed a report stating it did not support the request to return the minors to parents' care, and it opposed additional reunification services and supervised visitation. The Agency noted the parents had completed their parent education program, but failed to provide proof of compliance with requirements related to their substance abuse plan and a required medical evaluation and therapy. The Agency stated it was not in the best interest of the minors to reinstate visitation, reunification, or return the minors to their parents. The Agency expressed concern that reinstatement of visitation or return of the minors could trigger past traumas and disrupt the progress the minors had already made. The Agency noted the minors had been with their foster mother most of their life and anyone else, including parents, would be considered a stranger at this point. When shown pictures of mother, one boy did not know who she was and the other said, "That's [C.B.], I do not like her." The Agency also noted the minors had a strong, healthy bond with their foster mother, who sought to adopt them.

Prior to the section 388 hearing, the juvenile court granted mother's request for a bonding study.

On December 14, 2021, the juvenile court held a hearing on the petitions for modification. At the start of the hearing, the juvenile court shared its tentative ruling that it was disinclined to grant the section 388 petitions. Specifically, the juvenile court noted the Agency opposed reinstating supervised visitation, family reunification or placement of the minors with parents. The juvenile court further stated parents had completed

5

parenting classes, but not their substance abuse programming or a medical evaluation. The juvenile court also recited the CASA report's objection that reinstatement of visitation would not serve the minors' best interests. The juvenile court concluded it did not see a change in circumstances that was in the minors' best interest to reinstate visitation pending the bonding study.

Neither parent requested to submit additional evidence or testimony in support of their petition. Rather, all parties submitted on argument provided by counsel as to the merits of the petitions. Mother essentially argued her request should be granted because of the appellate opinion and that she would be disadvantaged if visitation were not ordered. Father's counsel informed the court father had made strides as it related to his substance abuse issues. Father repeated that claim to the court and asked for another chance on visitation. At the conclusion of the hearing, the juvenile court confirmed its tentative ruling, finding, "I did find by clear and convincing evidence that these boys were adoptable. They have a ready de facto parent ready to adopt them. That's not changed by the fact we will reconsider the [section 366.]26 stage. That is still in place. I think the boys' best interest remains that they have bonded with the de facto parent." The juvenile court continued the section 366.26 hearing to March 22, 2022, to await the results of the bonding study.

Parents appealed.

## DISCUSSION

Parents contend the juvenile court committed a mistake of law and abused its discretion in summarily denying their request for visitation and to provide family maintenance or family reunification services. They claim the juvenile court abused its discretion when it denied their section 388 petition(s). Parents claim the juvenile court's denial of their petitions seeking visitation while the bonding study was being completed all but guaranteed the bonding study would come out in favor of termination of their

6

parental rights. They also argue the juvenile court violated our remand order, due process, and the separation of powers by not granting them visitation. We find no error.

A. *Petitions to Change a Court Order*

Parents first argue the trial court erred in not holding an evidentiary hearing and summarily denying their section 388 petitions. We reject both contentions.

A petition to change or modify a juvenile court order under section 388 must factually allege there are changed circumstances or new evidence to justify the requested order, *and* the requested order would serve the minors' best interests. (*In re Daijah T.* (2000) 83 Cal.App.4th 666, 672.) Thus, " '[t]here are two parts to the prima facie showing: The parent must demonstrate (1) a genuine change of circumstances or new evidence, and that (2) revoking the previous order would be in the best interests of the children. [Citation.] If the liberally construed allegations of the petition do not show changed circumstances such that the child's best interests will be promoted by the proposed change of order, the dependency court need not order a hearing. [Citation.] We review the juvenile court's summary denial of a section 388 petition for abuse of discretion.' " (*In re C.J.W.* (2007) 157 Cal.App.4th 1075, 1079, quoting *In re Anthony W.* (2001) 87 Cal.App.4th 246, 250.) The petitioner has the burden of proof on both points by a preponderance of the evidence. (*In re Casey D.* (1999) 70 Cal.App.4th 38, 48, disapproved on other grounds by *Caden C., supra*, 11 Cal.5th at p. 636, fn. 5.)

Neither parent alleged any facts in their petition to show how visitation, or any of the other requested orders, would be in the best interest of the minors. Given this fatal flaw, neither parent was entitled to an evidentiary hearing and their petitions could have been summarily denied. (*In re Justice P.* (2004) 123 Cal.App.4th 181, 188-189.)

Nevertheless, the juvenile court provided parents with a hearing. With exceptions not relevant here, proof at a section 388 hearing "may be by declaration and other documentary evidence, or by testimony, or both, at the discretion of the court." (Cal. Rules of Court, rule 5.570(h)(2).) At that hearing, the juvenile court informed the parties

7

it read the petitions, the reports filed by CASA and the Agency, and the caregiver report. It further received statements from mother's counsel, father's counsel, father, minors' counsel and the Agency's counsel. Mother's counsel argued the propriety of granting visitation and her disadvantage in the bonding study if it was not granted. Father argued he had overcome his substance abuse problems and asked for another chance. At no time did either parent ask the trial court for the opportunity to present additional evidence, nor do they, on appeal, identify any evidence they were prevented from offering. Thus, we reject the argument the juvenile court summarily denied their petitions.

On the merits of their petitions, neither parent alleged any facts nor presented any evidence to show how visitation would be in the best interest of the minors. Instead, they argued how the lack of visitation would be detrimental to them in the section 366.36 hearing. Thus, the juvenile court did not abuse its discretion by denying the petitions.

### B. *Denial of Visitation on Remand*

Parents also argue the juvenile court violated our opinion on remand when it did not reinstate visitation and, in failing to do so, violated their due process rights and the separation of powers doctrine. Irrespective of our opinion, they argue they were entitled to visitation citing *In re Hunter S.* (2006) 142 Cal.App.4th 1497. We disagree.

This court's previous disposition explicitly directed the juvenile court as follows: "The orders terminating parental rights are reversed. The matter is remanded for the juvenile court to conduct a new section 366.26 hearing and consider the beneficial parental relationship exception to adoption in a manner consistent with *In re Caden C.*[*, supra*,] 11 Cal.5th 614 and this opinion, *and taking into consideration the family's current circumstances and any developments in the dependency proceeding that may have occurred during the pendency of this appeal.*" (Italics added.) Far from directing the juvenile court to reinstate visitation, we directed the juvenile court to hold a new section 366.26 hearing, and proceed in light of the current circumstances and

8

developments that took place during the pending appeal. "It follows that 'when an appellate court reverses a prior order of the [juvenile] court on a record that may be ancient history to a dependent child, the [juvenile] court must implement the final appellate directive in view of the family's current circumstances and any developments in the dependency proceedings that may have occurred during the pendency of the appeal.' (*In re Anna S.* (2010) 180 Cal.App.4th 1489, 1501.)" (*In re Ryan K.* (2012) 207 Cal.App.4th 591, 597.) That is precisely how the juvenile court proceeded. Nothing in our previous order directed the trial court to reinstate visitation.

We further reject parents' argument they had a statutory right to visitation under section 362.1, subdivision (a)(1)(A). Section 362.1, subdivision (a)(1)(A) provides: "(a) In order to maintain ties between the parent or guardian and any siblings and the child, and to provide information relevant to deciding if, and when, to return a child to the custody of his or her parent or guardian, or to encourage or suspend sibling interaction, *any order placing a child in foster care, and ordering reunification services*, shall provide as follows: [¶] (1) (A) Subject to subparagraph (B), for visitation between the parent or guardian and the child. Visitation shall be as frequent as possible, consistent with the well-being of the child." (Italics added.) This section is not applicable given the procedural posture of this case. Reunification services for parents were terminated in May of 2020, 19 months prior to the juvenile court's order challenged here. At that point in time, "the focus of the dependency proceedings had shifted from reunification to the child's need for a stable and permanent home. [Citations.]" (*In re Casey D., supra*, 70 Cal.App.4th at p. 48.) During this period, the parents may be entitled to some visitation, but their interests are not at the forefront like it is while reunification services are still being offered.

The appropriate standard is the one set forth in section 366.21, subdivision (h): "In any case in which the court orders that a hearing pursuant to Section 366.26 shall be held, it shall also order the termination of reunification services to the parent or legal

9

guardian. The court shall continue to permit the parent or legal guardian to visit the child pending the hearing *unless it finds that visitation would be detrimental to the child*." (Italics added.)

Section 366.21, subdivision (h) establishes that once reunification services are terminated, the provision of visitation is no longer mandatory, but is, instead, subject to a finding by the juvenile court whether visitation would be detrimental to the child. In this case, the juvenile court found exactly that when it held it was not in the minors' best interest to continue visitation with parents based on the family's current circumstances. (See, e.g., *In re Jacob P.* (2007) 157 Cal.App.4th 819, 829 [indicating the best interest and detriment standards are " 'two sides of the same coin' "—what is in the child's best interest is that which is not detrimental to the child].) We reject parents' assertion their due process rights were violated by this order because the detriment standard found by the juvenile court meets the requirements of due process. (*In re Manolito L.* (2001) 90 Cal.App.4th 753, 764.)

Parents cite *In re Hunter S., supra*, 142 Cal.App.4th at pages 1504-1505 for the proposition the juvenile court was required as a matter of law to grant them visitation. That case does not support their position, because unlike here, the juvenile court in *In re Hunter* made no finding of detriment. (*Ibid.*) The appellate court held, "unless the juvenile court finds it would be detrimental to the child, visitation remains a pivotal component of the dependency scheme even after family reunification services are terminated, and the court may not delegate discretion over whether visits occur to a third person." (*Id.* at p. 1504, italics omitted.) Here, the juvenile court affirmatively found visitation was not in the best interest of the child and that is the equivalent of a finding visitation would be detrimental to the minors. (*In re Jacob P., supra*, 157 Cal.App.4th at p. 829.) Based on this finding, parents were not entitled to visitation.

We further reject parents' argument that the lack of visitation at this juncture will undermine their attempt to prove the beneficial parental exception to adoption. A

juvenile court's discretion whether to allow for visitation between minors and their parents is not premised on whether visitation would benefit the parents. As we have stated, the focus is on what's in the best interest, i.e. not detrimental, of the minor. Additionally, the type of parent-child bond the court may rely on to avoid termination of parental rights based on that exception does not arise in the period between the termination of services and the section 366.26 hearing. "[A]t such a late stage in the proceedings, [parents'] right to develop further evidence regarding [their] bond with the children, was approaching the vanishing point." (*In re Richard C.* (1988) 68 Cal.App.4th 1191, 1195.) Once the juvenile court terminated reunification services, the law of dependency is designed to shift the focus from parents' interests in reunification, and thus visits, to the minors' interest in permanency and stability. (*Ibid*)

To the extent parents argue the juvenile court somehow violated the separation of powers doctrine, citing *Friends of H Street v. City of Sacramento* (1993) 20 Cal.App.4th 152, they have pointed to no legislative action the juvenile court interfered with in exercising its legitimate primary function of ascertaining whether visitation was in the best interest of the minors under the statutes that apply here. In *Friends of H Street*, the plaintiffs asked the court to establish street classification criteria, which was a legislative function. In denying this requested relief, the appellate court noted courts have the authority to rule on the constitutionality of legislative actions, but they may not interfere with those actions or force them. (*Id.* at p. 165.) As noted above, the juvenile court's exercise of discretion in refusing to grant visitation to parents was in line with the applicable statutory requirements and we see no violation of the separation of powers doctrine.

11

## DISPOSITION

The juvenile court's orders are affirmed.

                                         /s/
                                  EARL, J.

We concur:

    /s/
ROBIE, Acting P. J.

    /s/
RENNER, J.